207 So.2d 356

**AURORA PROPERTIES, INC., et al.**

v.

**LOUISIANA POWER AND LIGHT COMPANY.**

No. 48955.

Feb. 19, 1968.

Monroe & Lemann, Melvin I. Schwartzman, Andrew P. Carter, Eugene G. Taggart, W. Malcolm Stevenson, New Orleans, for relator.

William C. Nelson, Gibbons Burke, of Chaffe, McCall, Phillips, Burke, Toler & Hopkins, A. J. Waechter, Jr. and L. J. Darrah, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, Alvin J. Liska, City Atty., Posey R. Bowers, Ernest L. Salatich, Asst. City Attys., amicus curiae.

Gerald J. Gallinghouse, New Orleans, for respondents.

HAMLIN, Justice.

In the exercise of our supervisory jurisdiction, we directed certiorari to the Honorable David Gertler, Judge of the Civil District Court for the Parish of Orleans, in order that we might review his judgment of October 13, 1967, which overruled and dismissed defendant's declinatory exception to the jurisdiction of the court ratione materiae and dilatory exceptions of unauthorized use of summary proceedings and prematurity. Art. VII, Secs. 2 and 10, La. Const. of 1921. Prior to our granting the instant writ, the Court of Appeal, Fourth Circuit, denied defendant's application for writs of prohibition and certiorari, stating, "On the showing made there appears to be no error in the judgment complained of."

The facts of record reflect that plaintiffs, Aurora Properties, Inc. (hereinafter referred to as Aurora) and Plantation Lumber and Building Corporation (hereinafter referred to as Plantation), engaged in the development of Tall Timbers subdivision, a tract of land containing approximately 369 acres located in the Fifth Municipal District, or Fifteenth Ward (called "Algiers"), of the City of New Orleans. No agreement could be reached with defendant franchise owner, Louisiana Power and Light Company (hereinafter referred to as Utility), with respect to furnishing electric power and service in the subdivision.

On June 5, 1967, Aurora and Plantation filed suit against Utility in the Civil District Court for the Parish of Orleans. They prayed for a declaratory judgment declaring that Utility was legally obligated under Section 5, Paragraph (f), of the Regulations Governing the Subdivision of Land in New Orleans, Louisiana, adopted by the City Planning Commission on September 21, 1965, and made effective November 1, 1965,[1] and other ordinances and regulations of the City of New Orleans and the Constitution and statutes of the State of Louisiana, to extend at Utility's cost electric power and service to their Tall Timbers Subdivision property through underground and/or overhead main trunk lines and primary feeders and an underground and/or overhead distribution system. Aurora and Plantation also prayed for an alternative writ of mandamus ordering and directing Utility to furnish, at its cost, electric power and service in Sections 1 and 2 of the subdivision in accordance with officially approved plans, No. E–6–13837, dated April 27, 1967.

On June 30, 1967, the trial court sustained Utility's declinatory exception of insufficiency of citation and service of process; it overruled and dismissed all other exceptions filed by Utility (which included the declinatory exception of lack of jurisdiction ratione materiae).

On July 3, 1967, Aurora and Plantation filed an amended petition, in which they deleted their original prayer for a declaratory judgment and enlarged their prayer for an alternative writ of mandamus to compel Utility to furnish and install electric power and service to all of Aurora and Plantation's subdivision. On the same day, the trial court signed an order as prayed for, commanding Utility to show cause on October 23, 1967, why it should not comply with plaintiffs' petition.

On August 9, 1967, Utility filed a declinatory exception to the jurisdiction of the trial court ratione materiae and dilatory exceptions of unauthorized use of summary procedure and prematurity. On October 18, 1967, it answered in the form of a general denial; answer was ordered by the trial court.

As stated supra, Utility's exceptions were tried and overruled by the trial court on October 13, 1967. (Trial has been stay-

---

1. "(f) *Electrical and Telephone Distribution Systems*

"(1) All subdivisions and/or resubdivisions of land involving new streets shall provide *underground wiring* services to each lot from an underground distribution system located along a rear yard or side yard, servitude or easement as set forth in Section 4, paragraph (d), subparagraph (5) or in a dedicated public street or in a servitude provided in the front yard area.

"(2) All subdivisions and/or resubdivisions established in accordance with the above paragraph shall provide street lighting systems in accordance with the requirements of the Department of Utilities." (Emphasis ours.)

ed because of the granting of the instant writ.)

Evidence was introduced on trial of the exceptions to show that because of economic necessity Utility had furnished and installed underground wiring in Sections 1 and 2 of the subdivision, in accordance with a written agreement entered into on July 10, 1967 between plaintiffs and Utility. The agreement stated that Aurora agreed to pay the charge of $13,113.30 for underground electric distribution, which sum was agreed to be the difference in cost between the normal overhead electric distribution system and the underground electric distribution system as estimated by Utility. The payment was made under enumerated terms and conditions. The trial court stated that the parties were far apart as to the legal effect of the charges sought to be made for the service required. It is therefore evident that a determination will have to be made as to who shall bear the additional cost of installing and furnishing underground wiring—the differential between underground and overhead electric wiring. The great part of Tall Timbers Subdivision is not completely developed, and the electric distribution system is a cost factor.

Utility contends that the above determination should be made by the City Council of the City of New Orleans, and that, "The District Court erred by failing to maintain the declinatory exception of jurisdiction *ratione materiae,* because the District Court is without original jurisdiction to entertain and proceed in the mandamus suit filed by the plaintiffs to contest, nullify or interpret the rates, charges, tolls, prices, fares or compensation for the service or commodities supplied by, or the service practices of, the utility, which, in its operations under the franchise from the City of New Orleans, is subject by law to the jurisdiction of the City Council having exclusively all necessary power and authority of supervision, regulation and control over such matters and things." [2]

Aurora and Plantation contend that Utility misconstrues the fundamental character and purpose of this litigation. They contend that mandamus is the proper remedy, and that they instituted this mandamus proceeding to compel Utility to furnish electric service to their subdivision in Utility's exclusive franchise area. They argue that: (1) respondents, as owners and developers of this property, have a clear legal right to receive electric service from relator; and (2) which, under its exclusive franchise, has the mandatory legal

2. In an amicus curiae brief filed in this Court, New Orleans Public Service, Inc. submits that the Civil District Court for the Parish of Orleans was without jurisdiction ratione materiae and that, in the exercise of our supervisory jurisdiction, we should issue judgment maintaining defendant-relator's exception to the jurisdiction ratione materiae.

obligation to furnish electric service to respondents. They further argue that:

"The City Council is vested with authority to regulate utilities in New Orleans (Article 6, Section 7; Article 14, Section 22, La. Constitution; Section 4–1604 Home Rule Charter; and, the La. Public Service Commission is vested with such authority outside New Orleans (Article 6, Section 4; LSA–R.S. 45:1161 et seq.). But these legal provisions do not deprive respondents of their judicial remedy of mandamus to compel the public utility company to furnish electric service in its exclusive franchise area. Respondents can not compel the Council to issue a special order to force relator to exercise its mandatory legal duty in compliance with its franchise ordinance. Mandamus is respondents' only effective remedy against relator's refusal to furnish electric service."

A reading of all pleadings contained in the record herein definitely discloses that Utility is willing to furnish and install electric service in Aurora and Plantation's subdivision. It concedes that under LSA–R.S. 33:106 et seq. the State under its police power may authorize its agents in the interest of public safety to require that electrical wires be carried underground.[3] Utility asks who shall bear the cost of the differential between underground and over-

3. In amicus curiae brief, the City of New Orleans has clearly set forth the powers of city planning commissions. It also

head wiring. It states that it does not have an absolute and unqualified duty of, and that Aurora and Plantation have no such right to require, extension of electric service without any regard to cost or to whether the request for the extension, if carried out by it, would result in an undue burden on it or its other customers.

Cost is one of the most important elements of any project. Developers, builders, technicians, distributors, and furnishers of service should be thoroughly informed of cost before commencing their operations. If not, their efficiency and financial structure might be curtailed or seriously impaired. Utility has only serviced Sections 1 and 2 of Tall Timbers Subdivision, but its failure to service the other sections has not been due to unwillingness or controversy with respect to duty. As stated supra, its inaction has been due to a lack of knowledge as to who shall bear the cost differential.

Utility urges that in order to prevent an undue burden on itself or its other customers, it is clear that it should charge for the additional cost of service extensions which are more elaborate and costly than its normal overhead electric wiring or distribution system necessary to furnish service. (This deduction is made from the annotation of authorities at 58 A.L.R. 537).

persuasively demonstrates the need for underground wiring in new subdivisions.

We conclude that the information as to who shall bear the cost differential herein can be equated with the determination of a rate. For reasons hereinafter stated, we conclude that the City Council for the City of New Orleans is the proper body to make such determination.

Art. VI, Sec. 7, La.Const. of 1921, (Public Service Commission; local regulation of utilities; retention or surrender) provides that city government such as that of the City of New Orleans, shall retain certain powers such as control over local public utilities.[4] See, State v. City of New Orleans, 151 La. 24, 91 So. 533.[5]

Art. XIV, Sec. 22, La.Const. of 1921, adopted November, 1950, states that the City of New Orleans is declared to have a home rule charter consisting of Act 159 of 1912 as amended through the Regular Legislative Session of 1950, which home rule charter can be amended or replaced as provided.

Sec. 22 further provides that the City of New Orleans shall have the right and authority to adopt and enforce local police regulations and to do and perform all of the acts pertaining to its local affairs, property, and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions.

The Home Rule Charter of the City of New Orleans, effective May 1, 1954, continued the power of the City Council of the City of New Orleans to fix, establish, and

4. "Nothing in this article shall affect the powers of supervision, regulation and control over any street railway, gas, electric light, heat, power, water works, or other local public utility, now vested in any town, city or parish government unless and until at an election to be held pursuant to laws to be hereafter passed by the Legislature, a majority of the qualified electors of such town, city, or parish, voting thereon, shall vote to surrender such powers. In the event of such surrender such powers shall immediately vest in the Louisiana Public Service Commission; provided, that where any town, city, or parish shall have surrendered as above provided, any of its powers of supervision, regulation and control respecting public utilities, it may in the same manner, by a like vote, re-invest itself with such powers."

5. "The arrangement of the language quoted leaves no doubt that the reservation, 'except as herein otherwise provided', refers to the authority to fix rates. Moreover, the authority to fix rates is not 'otherwise provided' anywhere in the Constitution, unless it be in section 7 of article 6, reserving to all municipalities that already had such powers 'the powers of supervision, regulation and control' over their street railways and other local public utilities. * * *

" * * * * * *

"We cannot imagine that the statesmen who drafted the sections of article 6 of the new Constitution, referring to the Louisiana Public Service Commission, did not know that the commission council of the city of New Orleans had theretofore exercised the authority to fix rates for street railways and other local public utilities. New Orleans is by far the principal city in the state, her population being 8 times as numerous as that of the next city in importance, and 16 times as numerous as that of the third in importance. If the constitutional convention had intended to put a stop to the municipal council's exercising the authority to

regulate rates charged or to be charged by public utilities; it also continued the power with respect to service furnished or to be furnished by such utilities. Art. II, Sec. 2–101, Powers, Home Rule Charter of the City of New Orleans. This authority had been granted under prior legislation. See, Act 159 of 1912, Sec. 1, (d), (e); Act No. 93 of the E.S. of 1921, Sec. 8, Par. 14; Act 338 of 1936, Sec. 1, (g), (h). In Chapter 16, Sec. 4–1604, Establishment of Rates, of the Home Rule Charter, it is provided:

"In the exercise of its powers of supervision, regulation and control of any street railroad, electric light, gas, heat, power, waterworks, or other public utility, the Council shall, in cases involving the establishment, change or alteration of rates, charges, tolls, prices, fares or compensation for service or commodities supplied by such utilities, cause notice of the matter to be served upon the person or corporation affected thereby, so that such person or corporation shall have an opportunity, at a time and place to be specified in said notice, to be heard in respect to said matter. The Council shall make all necessary and reasonable rules and regulations to govern applications for the fixing or changing of rates and charges of public utilities *and all petitions and complaints relating to any matter pertaining to the regula-*

*tion of public utilities, and shall prescribe reasonable rules and regulations to govern the trial, hearing and rehearing of all matters referred to herein, under the same procedure as provided for ordinances granting franchises.*

"The orders of the Council fixing or establishing any rate, fare or charge for any commodity furnished, service rendered, or to be rendered, by any public utility shall go into effect at such time as may be fixed by the Council and shall remain in effect and be complied with, unless and until set aside or suspended by the Council or by a court of competent jurisdiction. Such order shall be upon a resolution or ordinance in open council meeting and passed by a majority vote of the Council.

"The orders of the Council shall be enforced by the imposition of such reasonable penalities as the Council may provide, and any party in interest may appeal from orders of the Council to the courts by filing suit against the Council within thirty days from the date of the order of the Council, and not thereafter." (Emphasis supplied.)

Under the above law, the City Council for the City of New Orleans has jurisdiction to determine who shall bear the extra cost of underground wiring in Tall Timbers Subdivision. We conclude that the Civil Dis-

fix rates for local public utilities, it would have done it plainly, as the Legislature

attempted to do, by the unconstitutional act of 1916. * * *"

trict Court for the Parish of Orleans was not the proper forum to try the instant proceeding at this time. It was without jurisdiction ratione materiae when this suit was filed. We also conclude that the authorities cited by plaintiffs are not apposite. Cf. Porter v. O'Neal, 205 La. 445, 17 So.2d 622; Pointe Coupee Elec. Mem. Corp. v. Central La. Elec. Co., La.App., 140 So.2d 683.

For the reasons assigned, the judgment of the Civil District Court for the Parish of Orleans, which overruled and dismissed defendant's declinatory exception to the jurisdiction of the court ratione materiae and dilatory exceptions of unauthorized use of summary proceedings and prematurity, is reversed and set aside. It is now ordered, adjudged and decreed that the exceptions be maintained and plaintiffs' suit dismissed. All costs to be paid by plaintiffs-respondents.