KIMBALL, C.J.
[ We granted certiorari in this case to determine whether the district court or the Louisiana Public Service Commission (“LPSC”) has subject matter jurisdiction to adjudicate a claim by a putative class of utility ratepayers in the City of Opelousas against Cleco Corporation and Cleco Power, LLC (“Cleco”). The ratepayers seek reimbursement for alleged overcharges for electricity for a period of nearly twenty years, based on a franchise agreement Cle-co signed with the City of Opelousas in 1991. For the reasons discussed herein, we reverse the judgment of the district court and sustain Cleco’s exception of lack of subject matter | jurisdiction because this is primarily a rate case that must be decided, in the first instance, by the LPSC. We further find inapplicable La. Const, art. IV, § 21(C), which excludes from the LPSC’s exclusive authority a public utility owned, operated, or regulated by a political subdivision, as this case does not involve a municipally-owned public utility company. Accordingly, the rulings of the lower courts are vacated and the ratepayers’ claims are hereby dismissed.
FACTS AND PROCEDURAL HISTORY
The City of Opelousas (“City”) owns a portion of the electric distribution system within the City’s limits. In October 1989, the City residents approved a proposal granting Cleco, an investor-owned public utility, an exclusive franchise to distribute electricity within the City. On May 14, 1991, in accordance with that authorization, the City entered into a franchise agreement with Cleco, granting Cleco an exclusive franchise to “erect, maintain, construct, own and operate electric poles, wires, lines and electric distribution and transmission systems” in the City. The franchise agreement also gave Cleco the exclusive right and privilege of distributing electric energy and electricity within the City. The agreement provides, “[i]t is understood and agreed that all consumers receiving electric service from CLECO shall be served under CLECO’s present or modified applicable rates and policies as approved by the Louisiana Public Service Commission.” The agreement further states the City will continue to own its electric distribution system, but “CLECO is granted the full right to use and operate the system and to repair and replace lines, poles and other equipment when deemed necessary for the purpose of efficiently maintaining the system.”
The agreement also provides Cleco “shall make all necessary improvements, additions, replacements and repairs to the City’s electric distribution system.... ” The franchise agreement specifies:
|a[t]he cost of all improvements due to destruction or damage caused by accident, malicious mischief, storm or weather conditions, or other ‘Acts of God’ or otherwise; the cost of replace *29 ment, reconstruction or other action required to restore the lines, poles and other facilities of the City’s electric distribution system; and the cost of making additions to the system shall be paid to CLECO by the City upon termination of this Agreement, less depreciation....
Another pertinent provision of the agreement provides, “CLECO hereby agrees to obtain and maintain in effect at all times all such insurance policies and/or insurance coverages on the electric distribution system as that now carried by CLECO on its property of a similar nature.”
In the aftermath of Hurricanes Katrina and Rita in 2005, Cleco raised its rates in a state-wide rate hike to collect revenue to cover the extraordinary damages incurred after the storms. Cleco implemented the rate increase by including in its LPSC-approved rate “distribution costs,” to cover the cost of system-wide additions and improvements to the distribution system responsible for delivering electricity to all Cleco customers. Cleco also imposed “storm restoration charges” to cover the costs incurred to restore the distribution system and to keep it functioning for all retail customers, including residents of Opelousas.
As a result of the rate-hike, plaintiffs, the citizen-ratepayers of Opelousas, filed two separate, identical class action suits, Mayo v. Cleco Corporation and Opelousas Trust Authority v. Cleco Corporation, Nos. 10-C-1179 and 10-C-2379, in the 27th Judicial District Court for the Parish of St. Landry, naming Cleco as defendant. The petitions sought reimbursement from Cleco for alleged overcharges from charging the distribution costs and storm recovery costs to the City’s ratepayers in breach of the franchise agreement. Plaintiffs alleged Cleco engaged in an ongoing pattern of negligence, fraud, and contractual breach to the detriment of the utility ratepayers in Opelousas. Plaintiffs claimed to be third-party beneficiaries to the franchise agreement through a stipulation pour autrui, and Lwere therefore entitled to enforce the contractual terms of the franchise agreement. The petitions specifically alleged Cleco allowed its insurance to lapse in violation of the franchise agreement and then charged plaintiffs “storm restoration charges” to recoup the uninsured damage to the City’s distribution system. The petitions also alleged the “distribution costs” were collected in violation of the franchise agreement, in which Cleco agreed the City would pay the cost of all improvements to the City’s distribution system upon termination of the agreement.
Cleco filed identical exceptions of lack of subject matter jurisdiction, prematurity, and improper venue in both class action proceedings. In support, Cleco argued the rate increases are subject to the exclusive jurisdiction of the LPSC under La. Const. art. IV, § 21(B).[1] Cleco argued since plaintiffs seek reparation of alleged overcharges, their claims fall within the original and exclusive jurisdiction of the LPSC pursuant to Daily Advertiser v. Trans-La., 612 So.2d 7 (La.1993), and their claims should be dismissed for lack of subject matter jurisdiction. Cleco also asserted both lawsuits were premature because plaintiffs did not exhaust their administrative remedies before filing suit in the dis *30 trict court. Finally, Cleco argued venue was improper because plaintiffs’ suit challenges orders from the LPSC approving the rates, and such action should have been brought in the parish of the LPSC’s domicile, East Baton Rouge Parish, pursuant to La. R.S. 45:1192.[2] The LPSC subsequently filed a memorandum in support of Cleco’s arguments. | ^Plaintiffs opposed the exceptions, arguing their petition calls for the interpretation of the franchise agreement and a legal determination of Cleco’s rights and responsibilities to plaintiffs under that agreement. This, plaintiffs claim, is a function which district courts perform in accordance with the original jurisdiction vested in district courts by La. Const, art. V, § 16. To support their contention, plaintiffs cited Central Louisiana Electric Co., Inc. v. Louisiana Pub. Serv. Comm’n (hereinafter “CLECO”), which held, “[t]he issues of validity and enforcement of contracts and the interpretation of statutes and municipal charters are generally civil matters over which the district courts have original jurisdiction.” 601 So.2d 1383, 1387 (La.1992). Plaintiffs further distinguished their claims from traditional rate cases by emphasizing their allegations concern the applicability of the distribution costs and storm recovery costs to the City’s ratepayers, rather than the calculation, determination, or amount of the individual charges. Plaintiffs also argued the utility distribution system is owned and regulated, through the franchise agreement, by the City and therefore, falls under La. Const. art. IV, § 21(C),[3] which provides an exception to the LPSC’s exclusive jurisdiction for municipally-owned utilities.
| flAfter a hearing, the district court, Judge Donald Hebert presiding, denied Cleco’s exceptions of lack of subject matter jurisdiction, prematurity, and improper venue. In oral reasons for judgment, the district court explained the City continues to own the distribution system pursuant to the franchise agreement. Consequently, the matter is governed by La. Const, art. IV, § 21(C), which excludes municipally-owned utilities from the LPSC’s exclusive jurisdiction. The district court concluded Cleco’s ability under the franchise agreement to charge City customers for the distribution, generation, transmission, and customer service of electrical facilities does not remove the case from its jurisdiction. The district court found plaintiffs had alleged a tortious breach of a duty created by the franchise agreement, which will eventually require the district court to determine the existence of a stipulation pour autrui and whether Cleco received unjust enrichment. The district court further *31 held a duty was created by the franchise agreement and therefore, venue was proper in St. Landry Parish. The district court could not find the LPSC’s plenary powers were exclusive in this particular case.
Not long after the lawsuit was filed in the 27th Judicial District Court, Cleco initiated an action before the LPSC, its regulating authority, seeking confirmation it had not overcharged its retail customers in Opelousas and that the rate components at issue in plaintiffs’ lawsuit had been approved by the LPSC. Plaintiffs formally appeared in the LPSC proceedings and opposed Cleco’s request for declaratory relief. The LPSC found the rates charged by Cleco to its Opelousas ratepayers were not only proper, but mandated by law. It further found Cleco was prohibited from fashioning a “special rate” for its Opelou-sas ratepayers, which is what plaintiffs assert should have been done. Plaintiffs appealed the LPSC’s ruling to the district court in East Baton Rouge Parish, where it is currently pending.
Cleco and the LPSC sought supervisory review from the district court’s ruling in separate applications. The Third Circuit Court of Appeal denied both |7writs with identical orders. Cleco and the LPSC then applied for supervisory and/or remedial writs to this Court. In Opelousas Trust Authority v. Cleco Corp., this Court granted both writs and remanded the case to the court of appeal for briefing, argument, and opinion.[4] 11-2204 (La.11/23/11), 76 So.3d 1158; 11-2217 (La.11/23/11), 76 So.3d 1159.
On remand, the Third Circuit Court of Appeal again denied Cleco’s and the LPSC’s writ applications, in a twelve-page opinion authored by Judge Saunders.[5] 11-348, 11-391, 11-392, 11-349 (La.App. 3 Cir. 2/15/12), 85 So.3d 196. With regard to Cleco’s exception of subject matter jurisdiction, the court of appeal found plaintiffs’ claims are different from the standard rate cases, in which consumers are simply arguing the LPSC set the wrong electricity rates. Plaintiffs’ claims arise from Cleco requesting the LPSC to set distribution rates and hurricane recovery costs for all consumers, without consideration of the franchise agreement. The court of appeal found plaintiffs were third-party beneficiaries of the franchise agreement, and alleged a valid claim for unjust enrichment by Cleco. Because plaintiffs raised tort and/or contract claims against Cleco, the court of appeal held the exclusive jurisdiction of the LPSC is not invoked. The court of appeal explained contract interpretation and the assessment of Cleeo’s conduct are judicial functions and the district court properly found it had subject matter jurisdiction over these cases.
Since the district court has subject matter jurisdiction over these cases, the court of appeal held the district court did not err in denying Cleco’s exception of prematurity. The court of appeal further held venue is proper in St. Landry Parish pursuant to Louisiana Code of Civil Procedure article 74, because plaintiffs alleged |8tort claims and that is where they sustained damages.[6] Pursuant to La. R.S. 45:1192, venue is proper in East Baton Rouge Parish for *32 suits challenging decisions made by the LPSC. The court of appeal concluded, however, La. R.S. 45:1192 does not apply here because the instant cases do not involve a direct appeal from any decision of the LPSC regarding plaintiffs’ claims. Since plaintiffs alleged breach of contract claims, the court of appeal found venue would also be proper in St. Landry Parish pursuant to Louisiana Code of Civil Procedure article 76.1, because at least part of the contract was to be performed there.[7]
Cleco subsequently filed two identical writ applications with this Court, seeking supervisory review in each class action suit. The LPSC also filed a writ application with this Court, asserting the same arguments raised by Cleco in its applications.[8] In its applications, Cleco raised the same arguments it brought before the court of appeal regarding subject matter jurisdiction, prematurity, and improper venue. Cleco maintains exclusive jurisdiction lies with the LPSC pursuant to Daily Advertiser since the LPSC approved the rates it charged plaintiffs after taking into account the franchise agreement. Although plaintiffs styled their claims in contract and tort law, Cleco asserts plaintiffs are merely challenging the rates set by the LPSC. Cleco argues the courts have uniformly rejected such “semantic endeavors by parties to circumvent the LPSC’s exclusive jurisdiction over rate matters.”[9] The franchise agreement states Cleco will charge |9the same rate applicable to all of its other retail customers and not a “special” Opelousas-only rate. Cleco submits the fact that the franchise agreement specifically calls for application of the “rates approved by the LPSC” bolsters its argument that only the LPSC has original jurisdiction to hear challenges to those rates.
Cleco further asserts the Third Circuit erred by suggesting the LPSC cannot engage in “[cjontract interpretation and the assessment of Cleco’s conduct.” Cleco points to La. R.S. 45:1176, which states, “The commission ... shall investigate the reasonableness and justness of all contracts, agreements and charges entered into or paid by such public utilities with or to other persons.... ” This Court has also held contracts entered into by public utilities with respect to fees and rates it will charge for services or commodities remain subject to supervision and adjustment by the LPSC. Conoco, Inc. v. Louisiana Pub. Serv. Comm’n, 520 So.2d 404, 407 (La.1988). In Conoco, this Court determined, on appeal from an LPSC ruling, the LPSC had not adequately considered the effect of its approval of a new tariff rate on an underlying contract between Conoco and the other parties regarding the rate Cono-co would pay for the use of a pipeline. Id. at 408. This Court explained the LPSC could modify or even abrogate contracts entered into by its regulated utilities with respect to rates and fees. Id. The Court remanded the matter to the LPSC for further consideration of the parties’ rights *33 and obligations under the agreement at issue. Applying Conoco to the instant case, Cleco contends the LPSC can consider the franchise agreement, and actually did consider the agreement in the LPSC proceeding, ultimately finding it irrelevant to the LPSC-approved rates Cleco charged.
Cleco further argues the franchise agreement is unavailing to plaintiffs because they are not parties to it and cannot claim a legitimate stipulation pour autrui under it. Cleco cites a recent case in which this Court held, “[a] person may | mderive a benefit from a contract to which he is not a party without being a third party beneficiary.” Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 10-2267, p. 51 (La.10/25/11); 79 So.3d 246, 283. In order to be a true third-party beneficiary, the stipulation pour autrui must be in writing and can never be presumed. Spears v. McCormick & Co., 520 So.2d 805, 811 (La.App. 3 Cir.1987) (citation omitted). Cleco argues there is no express stipulation in favor of plaintiffs or anyone else in the franchise agreement. In the absence of an express stipulation required by law, Cleco asserts the Third Circuit committed clear error by going beyond the four corners of the contract at issue and stating an election in Opelousas to authorize the granting of a franchise “indicates that Ratepayers were intended to be third-party beneficiaries of the franchise agreement.” Plaintiffs’ claims arise out of a franchise agreement and Cleco maintains the courts have uniformly held a contract between a service provider or franchisee, such as Cleco, and a city does not give rise to third-party beneficiary status in favor of that city’s inhabitants.[10]
Cleco next contends La. Const, art. IV, § 21(C) does not apply in this case because the City does not own a public utility simply because it owns the electric distribution system. Cleco asserts owning poles, wires, or other pieces of a distribution system does not equate to ownership of a utility. Cleco points to La. R.S. 45:121, which defines an “electric public utility” as “any person furnishing electric service within the state.” Cleco maintains the City does not provide electricity to its residents, as it does not generate or sell electricity, furnish electric services to its residents, have electric utility customers, bill anyone for electric service, or conduct proceedings on the rates charged to City residents. Instead, the InCity granted Cleco the right to use some distribution assets in exchange for monthly payments. Cleco argues this lease arrangement is straightforward and does not trigger La. Const, art. IV, § 21(C) or remove Cleco’s rates from LPSC regulation.
Cleco further argues the City does not have the authority to fix the rates Cleco charges its retail customers within the City’s limits, either by law or contract. Cleco submits Opelousas is a Lawrason Act municipality,[11] and this Court has made clear Lawrason Act municipalities do not have the power to fix rates charged by a privately-owned public utility like Cleco. See City of Shreveport v. Southwestern *34 Gas & Elec. Co., 151 La. 864, 92 So. 365, 367-68 (1922). Although a Lawrason Act municipality may contract with a privately owned utility for certain rates to apply, those contractual rates always remain subject to the LPSC’s authority and jurisdiction. Conoco, 520 So.2d at 407; City of Plaquemine v. Louisiana Pub. Serv. Comm’n, 282 So.2d 440, 442 (La.1973). Cleco argues not only does the LPSC have the power to review and fix the rates charged to residents in a Lawrason Act city, this Court has affirmatively determined the LPSC has a mandatory duty to do so. See United Gas Corp. v. Louisiana Pub. Serv. Comm’n, 239 La. 368, 118 So.2d 442 (1960).
Finally, Cleco claims venue in St. Landry Parish is improper because the only proper venue for challenges to LPSC orders is the parish of the LPSC’s domicile, which is East Baton Rouge Parish. See La. Const, art. IV, § 21; La. R.S. 45:1192. Cleco contends plaintiffs’ petition is an improper collateral challenge to Cleco’s LPSC-approved rates, as there is no dispute Cleco charged the City’s ratepayers the same LPSC-approved rates that it charged other retail customers. Alternatively, Cleco argues the district court should have dismissed the ease, or transferred it to Rapides Parish, because Louisiana law provides a | ^domestic corporation or limited liability company must generally be sued in the parish where its registered office is located. See La. C.C.P. art. 42(2).
In contrast, plaintiffs argue this is not a “rate case” but a contract dispute, which is a civil matter over which district courts have original jurisdiction. Plaintiffs contend Cleco contractually agreed to two important points in the franchise agreement — to provide insurance for the electric distribution system the City owns and to collect distribution costs from the City at the termination of the agreement. Despite these express terms, plaintiffs assert Cleco never sought approval from the LPSC for an Opelousas-specific rate and the LPSC approved the general rates without knowledge of the franchise agreement, as mandated by La. R.S. 45:1176.[12] Plaintiffs contend the resolution of their claims will necessarily require judicial interpretation of the franchise agreement. Plaintiffs cite CLECO, in which the City of Franklin entered into an operating agreement with Cleco whereby Cleco contracted to operate the City’s electric distribution system and to furnish electrical service to present and future customers in Franklin. This Court ultimately ruled the district court, not the LPSC, had subject matter jurisdiction over the claim because it involved a matter of contract law.
Plaintiffs further argue the district court has subject matter jurisdiction over this case under La. Const, art. IV, § 21(C). Plaintiffs allege all that is required to defeat LPSC jurisdiction under Section 21(C) is to show the City owns, operates, or regulates its utility system, and plaintiffs contend the City unquestionably does all three of these things. Cleco agreed in the franchise agreement the electrical distribution system was owned by the City. Plaintiffs further assert the distribution system, as well as service provided through it, is specifically regulated and operated through the terms of the franchise agreement. Plaintiffs argue the | ^distribution system is a public utility because the only way for electrical service to be provided in Opelousas, since the City owns its own distribution system, is through a franchise agreement. Plaintiffs again cite CLECO, *35 in which the LPSC found an electric distribution system constituted a municipal owned utility and pursuant to La. Const. art. IV, § 21(C), concluded it did not have jurisdiction over the claim since a municipally-owned utility was involved. 601 So.2d at 1385. Plaintiffs contend this holding defeats Cleco’s attempt to distinguish between a “public utility” and a distribution system owned by a municipality.
Finally, plaintiffs contend St. Landry is the proper venue for this case. Plaintiffs assert the contractual provisions of the franchise agreement are specifically intended for the benefit of individual residents, who receive individual bills from Cleco, and who individually have a right to performance by Cleco under the terms of the franchise agreement. As beneficiaries of the franchise agreement, plaintiffs contend their action for contractual breaches by Cleco is proper in St. Landry Parish under La. C.C.P. art. 76.1. Plaintiffs submit venue is also proper under La. C.C.P. art. 74 because they sustained damages in St. Landry Parish. Plaintiffs assert Cleco had a duty under the franchise agreement to pay distribution costs during the term of the agreement, including repairs or replacements caused by storms or other Acts of God, and to maintain insurance on the distribution system. Plaintiffs argue Cleco breached the legal duty it owed by assessing City residents for those charges which Cleco agreed to pay. Plaintiffs assert the damages sustained as a result of Cleco’s overcharges are “easily associated” with Cleco’s breach of its legal duty. Thus, venue is proper in St. Landry Parish.
We will address these arguments in se-riatim.
luDISCUSSION

I. Subject Matter Jurisdiction: La. Const, art. IV, § 21

The issue before this Court is subject matter jurisdiction, which is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. This case involves the question of original jurisdiction, which designates the adjudicative tribunal in which the initial adjudication is made. Moore v. Roemer, 567 So.2d 75, 79 (La.1990) (citing 20 Am. Jur.2d Courts § 98 (1965)). As thoroughly discussed above, plaintiffs contend original jurisdiction lies with the district court since this is a matter principally involving contract interpretation. Cleco, however, argues the LPSC has exclusive jurisdiction since this is primarily a rate case. To determine whether the district court or the LPSC has original jurisdiction over this case, we must look first to the Louisiana Constitution, which sets forth the adjudicative authority of each tribunal.
Louisiana Constitution article V, § 16(A) provides, “[ejxcept as otherwise authorized by this constitution ... a district court shall have original jurisdiction of all civil and criminal matters.” This Court has held the validity and enforcement of contracts, as well as damage suits, are generally civil matters over which the district courts have original jurisdiction. See CLECO, 601 So.2d at 1387; Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475, 487 (La.1991). However, when a party to an action qualifies as a public utility, La. Const, art. IV, § 21(B), is arguable applicable. Section 21(B) provides, “[t]he [LPSC] shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.” This Court *36 has construed this provision as providing the LPSC with “broad and independent | ispower and authority to regulate common carriers and public utilities.” Louisiana Power & Light Co. v. Louisiana Pub. Serv. Comm’n, 609 So.2d 797, 800 (La.1992) (citing South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm’n, 412 So.2d 1069, 1072 (La.1982)). The LPSC’s jurisdiction over public utilities has been described as “plenary.” Daily Advertiser, 612 So.2d at 16 (citing Gulf States Utilities Co. v. Louisiana Pub. Serv. Comm’n, 578 So.2d 71, 100 (La.1991), cert. denied, 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991)); Louisiana Power & Light, 609 So.2d at 800.
Section 21(B) also confers upon the LPSC exclusive jurisdiction, in the first instance, to fix or change any rate to be charged by a public utility; the courts are without power to fix or change rates until the LPSC has acted. Gulf States, 578 So.2d at 100; Louisiana Power & Light Co. v. Louisiana Pub. Serv. Comm’n, 528 So.2d 850, 856 (La.1988) (both citing South Central Bell Tel. Co. v. Louisiana Pub. Serv. Comm’n, 340 So.2d 1300, 1301 (La.1976)). The only jurisdiction courts have over fixing utility rates is to review the LPSC’s orders on appeal. Daily Advertiser, 612 So.2d at 17 (citing Louisiana Gas Service Co. v. Louisiana Pub. Serv. Comm’n, 245 La. 1029, 162 So.2d 555, 563 (1964)). While courts are statutorily permitted to “change, modify, alter, or ... set ... aside [orders of the Commission], as justice may require,” this Court has expressly held, “that statutory standard of review may not supercede or abrogate the constitutional scheme in which plenary ratemaking authority is delegated to the Public Service Commission.” Gulf States, 578 So.2d at 100; See La. R.S. 45:1192. When exercising appellate jurisdiction, a court may not fix or change any rate to be charged by a public utility, but must remand the case to the LPSC for it to determine the appropriate rate to be charged customers. Daily Advertiser, 612 So.2d at 17 (citing Louisiana Power & Light, 523 So.2d at 856).
11fiIn the instant case, plaintiffs claim Cleco breached the franchise agreement by charging them for distribution and storm restoration costs, and are now seeking to be reimbursed for the alleged overcharges. Pursuant to this Court’s precedent, if plaintiffs’ claims are matters of contract and tort law, they would generally constitute civil matters over which the district court has original jurisdiction. However, merely phrasing their allegations in terms of contract and tort law does not end the jurisdictional inquiry. This Court has held, “[T]he manner in which plaintiffs couch their claims does not automatically vest jurisdiction in the district court; rather, the nature of the relief demanded is dispositive.” Daily Advertiser, 612 So.2d at 16 (citing CLECO, 601 So.2d at 1386). Thus, to determine which tribunal has original jurisdiction over this case, this Court must look to the relief requested by the parties and determine whether this is a rate case subject to the LPSC’s original jurisdiction or a contract claim.
In the first paragraph of their petition, plaintiffs assert, “[t]his lawsuit focuses on CLECO’s systematic overcharging of Opelousas ratepayers for utility costs.” Plaintiffs further allege, “CLECO applied the same rates to Opelousas rate payers as it charged other retail customers.... The rates CLECO has charged to, and collected from, Opelousas residents do not comply with the provisions of the Opelousas Franchise....” Plaintiffs raise claims of negligence, negligent misrepresentation, and fraud, and seek the same relief for each claim, namely damages from being overcharged. In their negligence claim, *37 plaintiffs contend Cleco knew or should have known the rates it charged were improper and excessive and assert “CLECO could and should have, but failed to, develop and implement a special rate for Opel-ousas customers and ratepayers excluding distribution charges, in compliance with the Opelousas Franchise....”
In their negligent misrepresentation claim, plaintiffs assert, “CLECO, in the course of its business, supplied false information to Plaintiffs and Class members 117each time it billed and charged those ratepayers distribution costs.” Plaintiffs seek damages suffered from paying those bills. A similar claim was made in their allegation of fraud/fraudulent misrepresentation, as plaintiffs assert, “[i]n its billing to Plaintiffs and Class Members, CLECO intentionally included and concealed by embedding distribution charges, thereby representing to Plaintiff’s [sic] and Class Members that they owed distribution charges.” Plaintiffs assert such representations were material and false and plaintiffs suffered damages by relying upon the bills sent to them by CLECO and paying the amounts due thereunder.
In light of the allegations in the petition and the relief sought by plaintiffs, we conclude this is a rate case subject to the LPSC’s exclusive jurisdiction. Styled as a contract claim, plaintiffs assert this case is not a challenge to the rates approved by the LPSC because the LPSC did not approve an Opelousas-specific rate. We find, however, plaintiffs are challenging an LPSC-approved rate because they are challenging the application of a general rate that includes distribution costs and storm restoration charges. According to La. Const, art. IV § 21(B), the LPSC has the exclusive authority to regulate all public utilities and adopt and enforce reasonable rules, regulations, and procedures necessary to discharge its duties. The LPSC is also authorized by statute to “exercise all necessary power and authority over electric utilities for the purpose of fixing and regulating rates charged and services furnished.” Central Louisiana Electric Co., Inc. v. Louisiana Pub. Serv. Comm'n, 601 So.2d at 1386 (citing La. R.S. 45:1163) (CLECO). Since this matter involves the fixing and regulating of the rates charged by Cleco to City residents, we conclude this is a rate case over which the LPSC has exclusive jurisdiction. See Daily Advertiser, 612 So.2d at 26.
Our holding in Daily Advertiser is instructive because plaintiffs in that case similarly claimed they were overcharged due to manipulated fuel adjustment 118clauses. While plaintiffs asserted they were not merely seeking a refund, this Court held:
The flaw in plaintiffs’ argument is that it ignores the differentiation recognized by the jurisprudence between implementing the clear and unambiguous terms of a rate by awarding a money judgment — a judicial function — and interpreting or determining the reasonableness of a rate authorized by the LPSC — an administrative function. We find that plaintiffs’ claims fit squarely "within the latter category.
612 So.2d at 30 (internal citations omitted). Just as the plaintiffs in Daily Advertiser, plaintiffs in this case are seeking a determination regarding the reasonableness of the LPSC-approved rate that includes the storm restoration charges and the distribution costs. We find plaintiffs should have filed their claim in the LPSC, which has “exclusive jurisdiction, in the first instance, to fix or change any rate to be charged by a public utility.” Daily Advertiser, 612 So.2d at 16 (citing Gulf States Utilities Co., 578 So.2d at 100; Louisiana Power & Light, 523 So.2d at 856). Since the LPSC has exclusive jurisdiction over *38 this case, we hold the lower courts erred in failing to dismiss this case for lack of subject matter jurisdiction.
In Central Louisiana Electric Co., Inc. v. Louisiana Pub. Serv. Comm’n (“CLECO”), this Court held the LPSC has the “constitutional and statutory jurisdiction over subject matters which principally involve the right to fix and regulate rates charged by and services furnished by public utilities.” 601 So.2d at 1386. Plaintiffs rely upon CLECO to support their argument that the franchise agreement removes this case from the exclusive jurisdiction of the LPSC. The CLECO case, however, involved the interpretation, validity and enforcement of a franchise contract between a municipality and a public utility. 601 So.2d at 1387. In contrast, this case does not call for the interpretation of a franchise agreement. | iaThe issue is whether plaintiffs should have been charged a lower rate due to certain provisions in the franchise agreement.
We find no merit to plaintiffs’ contention that they should have been charged an Opelousas-specific rate. In South Central Bell Tel. Co. v. Louisiana Pub. Serv. Comm’n, this Court explained retroactive ratemaking occurs when a utility is allowed to recover an additional charge for past losses, or when a utility is required to refund revenues collected pursuant to its lawfully established rates. 594 So.2d 357, 359 (La.1992) (collecting cases omitted). This Court held:
A commission-made rate furnishes the applicable law for the utility and its customers until a change is made by the Commission. Michigan Bell Tel. Co. v. Michigan Pub. Serv. Comm’n, 315 Mich. 533, 24 N.W.2d 200 (1946). Therefore, the utility is entitled to rely on a final rate order until a new rate in lieu thereof is fixed by the Commission. Arizona Grocery Co. v. Atchison, Topeka Santa Fe Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932); Michigan Bell Tel. Co. v. Michigan Pub. Serv. Comm’n, 315 Mich. 533, 24 N.W.2d 200 (1946).
Id. As Cleco points out in its brief, it could not have imposed an Opelousas-specific rate. Moreover, the franchise agreement itself does not provide for an Opelousas-specific rate. Instead, it provides, “[i]t is understood and agreed that all consumers receiving electric service from CLECO shall be served under CLECO’s present or modified applicable rates and policies as approved by the Louisiana Public Service Commission.” Under the terms of the franchise agreement, plaintiffs agreed to be subject to the same LPSC-approved rate charged to all of Cleco’s customers.
We also find no merit to plaintiffs’ contention that consideration of the franchise agreement removes this case from the LPSC’s exclusive jurisdiction. Under La. R.S. 45:1176, the LPSC is required to investigate the reasonableness of contracts entered into by public utilities and “shall have the power to disallow as an operating expense of any public utility such part of the amount so paid by it 120under any such contract or agreement as the commission ... may find, after hearing, to be unjust or unreasonable.” Thus, the LPSC is authorized by statute to consider contracts, such as the franchise agreement entered into in this case, in determining the reasonableness of a rate. It is also well settled that contracts with common carriers may be abrogated. Co-noco, 520 So.2d at 407. This Court has consistently held:
[a]bsent some prohibition the Louisiana Public Service Commission has continuing authority with respect to rates for the sale of natural gas, covered by a long term contract. We have consistently held that contracts entered into between a public utility and its custom *39 ers are subject to regulatory authority and their terms and conditions with respect to rates are subject to supervision and adjustment by the Commission upon application of either party thereto. Alexandria & W. Ry. Co. v. Long Pine Lumber Co., 152 La. 399, 93 So. 199 (1922); City of Shreveport v. Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365 (1922).
Conoco, 520 So.2d at 407 (citing City of Plaquemine v. Louisiana Pub. Serv. Comm’n, 282 So.2d 440, 442 (La.1973)). Where there is actual conflict between the rate-making power and the right of contract, and the public interest requires it, then contractual obligations must yield to the rate-making power of the State. Id. (citing City of Plaquemine, 282 So.2d 440). Consequently, the consideration of the franchise agreement does not remove the case from the LPSC’s exclusive jurisdiction.
The Louisiana appellate courts have reached the same result in similar cases. In Milstead v. Louisiana Power and Light Co., the court held, “[W]hen a claim is stated that is essentially a dispute about the furnishing of services or the cost of the services, the claim is beyond the jurisdiction of the trial court.” 581 So.2d 1085, 1086 (La.App. 2 Cir.1991) (citing O’Niell v. Louisiana Power & Light Co., 558 So.2d 1235 (La.App. 1 Cir.1990)). The Milstead court further held the “[rjates charged for electricity and refunds for overcharges are exclusively within the jurisdiction of the [L] PSC.” Id. (citing La. Const. art. IV § 21; La. R.S. 45:1163; La. R.S. 45:1164). The First Circuit has also held, “[w]e readily concede that rates and services of the various regulated industries in this state are indeed the responsibility of the Louisiana Public Service Commission by virtue of Art. 4, Sec. 21 of the Louisiana Constitution....” South-West Utilities, Inc. v. South Central Bell Telephone Co., 339 So.2d 425, 429 (La.App. 1 Cir.1976). Since plaintiffs are challenging the LPSC-approved rates and seeking a reimbursement for overcharges, these cases support our conclusion the instant case is primarily a rate matter within the LPSC’s exclusive jurisdiction.

II. La. Const, art. IV § 21(C): Municipally-Owned Utility

Although we have concluded this is primarily a rate matter subject to the LPSC’s exclusive jurisdiction, La. Const. art. IV § 21(C) provides an exception to the LPSC’s jurisdiction when a municipally-owned utility is involve. Section 21(C) states the commission “shall have no power to regulate any common carrier or public utility owned, operated, or regulated on the effective date of this constitution by the governing authority of one or more political subdivisions.” An “electric public utility” is defined in La. R.S. 45:121 as “any person furnishing electric service within this state.” Plaintiffs argue Section 21(C) applies in this case because the City owns, operates and regulates a public utility. Plaintiffs assert the franchise agreement shows Cleco agreed the electrical distribution system would continue to be owned by the City. Plaintiffs further claim the distribution system, as well as the electrical service provided through it, is specifically operated and regulated by the terms of the franchise agreement. We find plaintiffs’ argument on this issue lacks merit.
It is clear from the franchise agreement the City does not “furnish electric service” to its residents under La. R.S. 45:121. As Cleco points out, the City does not provide electricity to its residents because it does not generate or sell electricity. There is no evidence indicating the City has electric utility customers, Uphills City residents for electric service, or conducts proceedings *40 on the rates charged to residents. The franchise agreement further specifies, “[i]t is understood and agreed that the electric distribution system contemplated by this Agreement does not include the City’s power plant.” Plaintiffs contend this Court’s holding in CLECO defeats Cleco’s attempt to distinguish between a “public utility” and a distribution system owned by a municipality. We find no merit to this contention because it relies upon the holding of the LPSC in that case, which was reversed by the district court. 601 So.2d at 1385.
This Court subsequently affirmed the district court’s decision in CLECO, holding the district court had subject matter jurisdiction over the claim because it involved a matter of contract law. 601 So.2d at 1387. Thus, CLECO does not hold, or even suggest, a distribution system is equivalent to a public utility. An older case from this Court provides additional support for our holding. In City of Plaquemine, the sole issue was whether the LPSC had jurisdiction to increase the price of natural gas sold and delivered to the City by a common carrier engaged in the sale and delivery of natural gas in the state. 282 So.2d at 441. While there was no dispute the case involved a municipally-owned utility, this Court held, “regulating the common carrier pipeline and thus the rates they charge a municipality which operates a distributing system is not regulating the municipality regarding services given or rendered by such municipality.” Id. at 443. If regulating the rates charged to a municipally-owned utility is not regulating the municipality, then a fortiori regulating the rates charged to Opelousas residents is not regulating a municipality. We therefore hold this case does not involve the regulation of a municipally-owned utility.

III. Venue

| ajSince we have concluded the lower courts erred in denying Cleco’s exception of lack of subject matter jurisdiction, we need not reach the issue of venue.
CONCLUSION
For the foregoing reasons, we reverse the decision overruling Cleeo’s exception of subject matter jurisdiction. The Louisiana Constitution, Revised Statutes, and Louisiana jurisprudence clearly dictate this is a rate matter subject to the exclusive jurisdiction of the LPSC. The plaintiffs in this case are challenging the reasonableness of a rate imposed by Cleco and asserting they should have been charged an Opelou-sas-specific rate. As this Court has previously held, La. Const, art. IV § 21(B) grants the LPSC the exclusive authority, in the first instance, to fix or change any rate to be charged by a public utility; the courts lack the power to fix or change rates until the LPSC has acted. Since the lower courts lacked subject matter jurisdiction over this case, we vacate the rulings of the lower courts. The plaintiffs’ claims are hereby dismissed.
REVERSED; VACATED; DISMISSED.

. Louisiana Constitution Article IV, § 21(B) provides:
Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.

. La. R.S. 45:1192 provides in pertinent part: If any of the persons, mentioned in R.S. 45:1191, or other party in interest, shall be dissatisfied with any order entered by the commission, adopting, fixing, changing, altering, or modifying, any rate, classification, rule, charge, or general regulation, and no application for rehearing is filed, the dissatisfied person may ... file in a court at the domicile of the commission, a petition setting forth the particular cause of objection to the order or regulation of the commission complained of.... The court may affirm the order of the commission complained of, or it may change, modify, alter, or set it aside, as justice may require.

. La. Const, art. IV, § 21(C) provides in pertinent part:
Limitation. The commission shall have no power to regulate any common carrier or public utility owned, operated, or regulated on the effective date of this constitution by the governing authority of one or more political subdivisions, except by the approval of a majority of the electors voting in an election held for that purpose; however, a political subdivision may reinvest itself with such regulatory power in the manner in which it was surrendered.

. Justice Knoll would have denied the writs.

. The court of appeal noted in its opinion that the case involved the consolidation of four writs into a single writ opinion, as Cleco and the LPSC had each sought supervisory review of both class action suits.

.La. C.C.P. art. 74 provides in pertinent part: "An action for the recovery of damages for an offense or quasi offense may be brought in the parish where the wrongful conduct occurred, or in the parish where the damages were sustained.”

. La. C.C.P. art. 76.1 provides: "An action on a contract may be brought in the parish where the contract was executed or the parish where any work or service was performed or was to be performed under the terms of the contract.”

. The three applications were subsequently consolidated by this Court.

. Daily Advertiser, 612 So.2d at 27 (citing Fremin's Food & Furniture, Inc. v. Teche Elec. Coop., Inc., 545 So.2d 998, 1000 (La.1989); Aurora Properties, Inc. v. Louisiana Power & Light Co., 251 La. 880, 207 So.2d 356, 359 (1968); Shreveport Laundries, Inc. v. Southern Cities Distrib. Co., 176 La. 994, 147 So. 56, 57 (1933); Milstead v. Louisiana Power & Light Co., 581 So.2d 1085, 1086 (La.App. 2 Cir. 1991); O'Niell v. Louisiana Power & Light Co., 558 So.2d 1235, 1237 (La.App. 1 Cir. 1990); Edwards v. Louisiana Power & Light Co., 439 So.2d 442, 443 (La.App. 1 Cir.1983)).

. See, e.g., Neighborhood Action Comm. v. State of Louisiana, 94-807 (La.App. 1 Cir. 3/3/95); 652 So.2d 693; Shafouk Nor El Din Hamza v. Bourgeois, 493 So.2d 112 (La.App. 5 Cir.1986); see also Spears, 520 So.2d at 811; New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452 (5th Cir.1984) (applying Louisiana law and holding that ratepayers and certain city officials were not third-party beneficiaries to a contract between their electric utility and its gas supplier).

. The City of Opelousas elected to come under the Lawrason Act’s provisions in 1898. See Saunders v. City of Opelousas, 159 La. 527, 105 So. 608, 610 (1924).

. La. R.S. 45:1176 provides in pertinent part, "The commission ... shall investigate the reasonableness and justness of all contracts, agreements and charges entered into or paid by such public utilities with or to other persons....”