DREW, J.
| )The Town of Sterlington (“Sterling-ton”) and Greater Ouachita Water Company (“GOWC”) entered into a franchise agreement in June of 1996 for GOWC to provide water to Sterlington. The franchise is set to expire in 2016.
On February 27, 2013, Sterlington filed a petition for injunctive and declaratory relief in the Fourth Judicial District Court after it learned that GOWC was forcing residential developers in Sterlington to donate or surrender ownership of water lines installed by the developers[1] to GOWC in order for GOWC to provide water service to the developments.
Sterlington alleged that the franchise agreement did not require GOWC to own all the water lines. It further alleged that Sterlington owned a substantial number of the lines serviced by GOWC, and that Sterlington was going to develop its own water treatment facility to supply water upon the expiration of the franchise agreement. Sterlington sought a declaration that GOWC had violated the franchise agreement, as well as injunctive relief prohibiting GOWC from denying access to water to any individual or entity for failing to surrender and/or donate water lines to GOWC.
*954 After the district court granted a temporary restraining order and while the motion for preliminary injunction was pending, GOWC filed the exception of lack of subject matter jurisdiction. It claimed that any dispute with Sterlington relating to the terms and conditions of water service provided by GOWC was subject to the exclusive jurisdiction of the Louisiana Public Service Commission (“PSC”).
|aThe court denied the exception. GOWC applied for a supervisory writ, which this court granted. This court ordered that the record be lodged and further ordered the parties to brief the matter.
DISCUSSION
GOWC argues that only the PSC has original jurisdiction to determine its obligation to provide water service and the terms of that service. Sterlington seeks to compel GQWC to provide water service without requiring donation of water lines.
Sterlington counters that this is a case calling for the interpretation and enforcement of the franchise agreement, so it is a contract case properly before the district court in the first instance. Sterlington contends that GOWC is violating the franchise agreement by requiring the donation of water lines as a condition to receiving water. It further contends that the franchise agreement does not require that GOWC own the water lines, and in fact, a substantial portion of the lines in Sterling-ton are not owned by GOWC.
La. Const. Art. V, § 16(A) vests in the district courts “original jurisdiction of all civil and criminal matters,” unless there is other jurisdictional authorization in the constitution. Central Louisiana Elec. Co. v. Louisiana Public Service Com’n, 601 So.2d 1383 (La.1992).
La. Const. Art. IV, § 21(B) vests jurisdiction over public utilities in general and rates in particular in the PSC. Daily Advertiser v. Trans-La, a Div. of Atmos Energy Corp., 612 So.2d 7 (La.1993). It provides that:
The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided |aby law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
This provision has been interpreted as affording the PSC broad, independent and plenary regulatory powers over public utilities. Gulf States Utilities Co. v. Louisiana Public Service Com’n, 92-1185 (La.3/17/94), 633 So.2d 1258. This plenary authority includes the right to exercise all necessary power and authority over public utilities for the purpose of fixing and regulating rates charged or to be charged by, and service furnished by, such public utilities. Id.
The supreme court concluded in Louisiana Power & Light Co. v. Louisiana Public Service Com’n, 609 So.2d 797 (La.1992), that in light of this broad plenary power, the PSC had the authority to select between two public utilities competing to provide service to a subdivision.
The manner in which a plaintiff couches his claim does not automatically vest jurisdiction in the district court; rather, the nature of the relief demanded is dispositive. Daily Advertiser, supra; Central Louisiana Elec. Co., supra. Nor does the fact that a party to an action qualifies as a public utility automatically divest a court of original jurisdiction; however, that fact renders La. Const. Art. IV, § 21(B) arguably applicable. Daily Advertiser, supra.
*955 La. R.S. 45:1163(A)(1) provides that “[t]he commission shall exercise all necessary power and authority over any street railway, gas, electric light, heat, power, waterworks, or other local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service |4furnished by such public utilities.”
The power, authority, and duties of the PSC shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by such public utility, except in Orleans Parish. La. R.S. 45:1164(A).
The supreme court has discussed the framework for selecting between the PSC’s authority to regulate rates and the district court’s authority to apply and enforce Louisiana laws:
Thus, the PSC has constitutional and statutory jurisdiction over subject matters which principally involve the right to fix and regulate rates charged by and services furnished by public utilities. The Legislature has never “provided by law” for the PSC to exercise jurisdiction over other subject matters and areas of litigation in which public utilities are involved, such as tort actions and contract disputes. It is therefore necessary at the outset to determine the relief demanded by all parties in order to resolve the subject matter jurisdiction issue.
Central Louisiana Elec. Co., 601 So.2d at 1386.
A district court was found to have subject matter jurisdiction in Central Louisiana Elec. Co., supra, to settle a dispute between CLECO and the City of Franklin over contractual and statutory issues. CLECO, which held a franchise agreement with Franklin to supply electricity to the entire city, contended that its contractual rights were impaired when the city entered into a franchise agreement with another utility company to supply electricity to a newly annexed part of the city. CLE-CO sought an interpretation of its contract as to whether the exclusivity provision in the contract was valid and whether the city had the right to grant another franchise covering the annexed area. In reaching its conclusion, the ^supreme court acknowledged the limits of the PSC’s expertise:
Inasmuch as the PSC cannot invalidate a franchise on the basis of absence of public convenience and necessity, an area which the PSC has general expertise, then the PSC normally would not be the appropriate tribunal to invalidate (or enforce) a franchise on the basis of contractual, constitutional or statutory provisions, which is not generally an area of PSC expertise.
Id., 601 So.2d at 1387. ■
In Daily Advertiser, supra, class action plaintiffs alleged that the defendants overcharged them by manipulating automatic fuel adjustment clauses. Their lawsuit raised the state law claims of antitrust violations, breach of contract, breach ■ of fiduciary duty, unjust enrichment and fraud by the defendant utilities. The issue was whether the lawsuit was an antitrust or a damage action or whether it was a rate case. The court concluded that it was primarily a rate matter that needed to be decided in the first instance by the PSC. Nevertheless, the plaintiffs were, not deprived of their right to seek damages other than overcharges in court as those claims were deferred until the PSC proceedings were completed.
In Milstead v. Louisiana Power & Light Co., 581 So.2d 1085 (La.App. 2d Cir.1991), writ denied, 587 So.2d 697 (La.1991), a utility customer alleged that the utility had violated its contract with him by not letting him know that he was eligible *956 for a lower rate for electricity. While Milstead’s claim was couched as a suit under the contract, this court nonetheless concluded that the trial court lacked jurisdiction because Milstead was essentially claiming that he was being overcharged. “When a claim is stated that is essentially a dispute about the furnishing of services or the cost of the services, the claim is beyond the jurisdiction of the trial |ficourt.” Milstead, 581 So.2d at 1086 (citing O’Niell v. Louisiana Power & Light Co., 558 So.2d 1235 (La.App. 1st Cir.1990)).
In Opelousas Trust Authority v. CLECO Corp., 2012-0622 (La.12/4/12), 105 So.3d 26, class action suits were filed seeking reimbursement from CLECO for alleged overcharges. It was alleged that CLECO breached its franchise agreement, committed fraud, and was negligent when it charged distribution costs and hurricane recovery costs to its ratepayers in Opelou-sas. The plaintiffs argued that their case was a contract dispute, not a rate case. The supreme court disagreed, concluding it was a rate case subject to the PSC’s exclusive jurisdiction because the plaintiffs were challenging the application of a rate that had been approved by the PSC.
In Aurora Properties, Inc. v. Louisiana Power & Light Co., 251 La. 880, 207 So.2d 356 (1968), subdivision developers and a utility company disputed who was to bear the additional cost of installing and furnishing an underground as opposed to a normal overhead electrical distribution system. The issue before the supreme court was whether the determination should be made by the district court or the New Orleans City Council, which was vested with authority to regulate the utility. The supreme court concluded that the determination of who should bear the cost could be equated with the determination of a rate, and the City Council was the proper body to make such a determination. In support of its argument that the PSC has jurisdiction over this dispute, GOWC points to a provision in the franchise agreement that it asserts gives the PSC the authority to approve the terms and conditions of 17service provided by GOWC. This provision reads:
The Company shall charge the rates approved by the [PSC] and shall have the right to adopt and make effective from time to time reasonable rules and regulations providing for terms and conditions of service, subject to the approval of the Commission the regulations may provide for the payment, on or before a specified day each month, for all service furnished for the preceding month, with the right to disconnect and discontinue services to all delinquents.
This provision is not skillfully drafted, and it does not appear that “subject to the approval of the Commission” is referring to all rules and regulations made by GOWC providing for terms and conditions of service. Rather, it appears that PSC approval is needed for the regulations to provide for payment for all service furnished for the preceding month, with the right to disconnect service for all those with delinquent accounts.
We agree with Sterlington that this is a case properly before the district court because it is a contractual dispute case calling for the interpretation and enforcement of the franchise agreement to determine whether GOWC can demand the donation of water lines as a condition for new customers to receive water. We do not read the PSC’s power to regulate services furnished so broadly as to encompass in this instance what is a matter of contractual interpretation. Moreover, there is no issue about fees or rates in this suit. The issue is squarely whether the franchise agreement permits GOWC to impose the condition.
*957 DECREE
The district court did not err in denying the exception of lack of subject matter jurisdiction. At GOWC’s cost, the previously granted writ is RECALLED, the order denying the exception of lack of subject matter | jurisdiction is AFFIRMED, and the matter is REMANDED for further proceedings.

. Some of the developers had apparently received funds from Sterlington to install infrastructure, including the water lines sought by GOWC.