666 So.2d 327 (1995)
Gregory L. TOMAS, Plaintiff-Appellant,
v.
CONCO FOOD DISTRIBUTORS, Defendant-Appellee.
No. 95-348.
Court of Appeal of Louisiana, Third Circuit.
October 25, 1995.
Order Granting Limited Rehearing January 10, 1996.
Roy Maughan, Baton Rouge, for Plaintiff-Appellant.
Denis Paul Juge, Metairie, for Defendant-Appellee.
Before SAUNDERS, and SULLIVAN, JJ., and KNIGHT [1], J. Pro Tem.
WILLIAM N. KNIGHT, Judge Pro Tem.
This appeal arises from the judgment of the workers compensation hearing officer which held that the plaintiff, Gregory L. Tomas, failed to present evidence of a recoverable *328 work injury pursuant to La.R.S. 23:1021(7)(e)(i) or (ii), since his stroke was not caused by physical stress. The hearing officer also declined to rule on Tomas' constitutional challenge to this statute finding that she lacked jurisdiction to do so. Tomas appeals the hearing officer's finding of lack of jurisdiction. We affirm.

FACTS
At the time of his strokes, Tomas was employed by the defendant, Conco Food Distributors. On December 2, 1992, while attending a meeting at work, Tomas suffered a stroke. He was taken to the hospital where diagnostic work, including an angiogram, was performed. The angiogram brought about a second stroke which resulted in severe, irreversible brain damage.
Tomas filed a claim for workers compensation benefits. Subsequently, Tomas amended his petition to challenge the constitutionality of La.R.S. 23:1021(7)(e)(i) and (ii) which limits recovery to cases of heart-related or perivascular injuries caused by extraordinary physical stress only. After a trial on the merits, the hearing officer in her written reasons for judgment stated:
The court finds that Mr. Tomas proved by clear and convincing evidence that his work stress was extraordinary and unusual in comparison to that experienced by the average employee in that occupation due to the company's bankruptcy proceedings. The court further finds, based upon the testimony of Dr. Anderson, that the work stress was the predominant and major cause of the worsening of Mr. Tomas' diabetic condition which was the predominant and major cause of the first stroke and that the second and disabling stroke occurred as a result of treatment of the first stroke. However, the court also finds that the work stress was emotional or mental as opposed to physical, and therefore, under the terms of the statute, Mr. Tomas' stroke is not compensable. See Charles[2], supra, at page 1370. As should be evident from the court's findings, the fact that the stress was not physical is the only reason the court denies the compensability of the claim.
Mr. Tomas contends that the statute is unconstitutional because of the increased burden of proof and because of the exclusion from coverage of victims of mental or emotional stress. The court finds that it does not have the jurisdiction to determine the constitutionality issue. See Whittington v. Langston Drilling Co., Inc., 26,001 CA (2nd Cir.1994).

LAW
As noted in her reasons for judgment, the hearing officer based her finding of lack of jurisdiction on the second circuit case of Whittington v. Langston Drilling Co., Inc., 26,001 (La.App. 2 Cir. 9/21/94) 643 So.2d 336. In Whittington, the statute being constitutionally challenged was La.R.S. 23:1271, which requires an employer's consent to lump sum settlements between employees and the employers' worker's compensation carrier. The Whittington court ruled that only the district court and not the hearing officer had jurisdiction over this question, basing its decision on the following line of reasoning:
The [Office of Worker's Compensation] is a legislatively-created administrative body, in which the [Worker's Compensation Hearing Officer's] function in a quasi-judicial capacity to settle workers' compensation disputes. LSA-R.S. 23:1310.1, et seq.; La. Const. Art. V, § 16(A)(1). Sections 1 and 2 of Article II of the Louisiana constitution establish three separate branches of government, and provide that no branch may exercise powers belonging to another. Only the judicial branch has the authority to declare statutes unconstitutional. State v. Board of Sup'rs of Elections, 186 La. 949, 173 So. 726, 731 (1937), cited in fn. 8 of Church Point Wholesale Beverage v. Tarver, 614 So.2d 697 (La. 1993).
Determining a statute's constitutionality is strictly a function of the courts. Red River Coors, Inc. v. McNamara, 577 So.2d 187 (La.App. 1st Cir.1991). See also State v. Cenac, 241 La. 1055, 132 So.2d 928 *329 (1961); Appeal of Brisset, 436 So.2d 654 (La.App. 1st Cir.1983), writ denied; Firefighters Local 632 v. Civ. Service Com'n., 495 So.2d 958 (La.App. 4th Cir.1986), writ denied; Bell v. Dept. of Health and Human Resources, 483 So.2d 945 (La.1986), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55.
Id. at 339.
In holding that the determination of a statute's constitutionality is strictly a function of the courts, the second circuit also impliedly found that the legislature did not have the authority to transfer the power to decide a statute's constitutionality from the district court to the worker's compensation hearing officer.
The Louisiana Supreme Court recently addressed the legislature's power in State of Louisiana in the Interest of A.C., 93-1125 (La. 1/27/94) 643 So.2d 719, explaining that:
Unlike the federal Constitution, which functions from "enumerated powers" to each branch of government, the Louisiana Constitution presumes extensive and complete powers to the state legislature. State ex rel. Guste v. Legislative Budget Committee, 347 So.2d 160, 164 (La.1977). The only limits on this power stem from specific enumerations in the state Constitution:
A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state's constitutions are not grants of power, they are rather limitations on the power of the people exercised through the state legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute assailed.
In re Gulf Oxygen Welder's Supply Profit Sharing Plan and Trust Agreement, 297 So.2d 663, 665 (La.1974). One such provision is the prohibition on violations of the principle of separation of powers, as espoused by the Louisiana Constitution of 1974.
The scheme of separation of powers stems from Article II, which provides that
Section 1. The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.
Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.
Id. at 731-732.
In section two of this article, deviations from the rule of separation of powers is allowed where the constitution provides for it. La. Const. art. V, § 16 provides for such a deviation from the separation of powers. The article is entitled "Judicial Power." Section 16 addresses district court jurisdiction. In pertinent part, the section provides that:
(A)(1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.[3] (emphasis added)
Thus, the constitution placed in the hands of the legislature the power to carve out the jurisdiction of the worker's compensation hearing officers. As discussed above, the legislature has plenary power except as restricted by the constitution. In Whittington the court held that determining a statute's constitutionality is strictly a function of the *330 courts and as such, may not be delegated to an agency. However, other strictly judicial functions have been delegated to agencies. The determination of fact is exclusively a judicial function. State in Interest of A.C., 93-1125. Yet, there is no question that this function is delegable and has been delegated in the case of the worker's compensation hearing officers.
We acknowledge that in many agencies the function of determining statutory constitutionality has not been delegated, as noted by the Whittington court, and indeed may not be allowed by the state constitution in those cases. However, there is nothing in the constitution which would prohibit the legislature from giving the hearing officers jurisdiction over the constitutionality of worker's compensation statutes. Therefore, the question is whether the legislature has done so.
La.R.S. 23:1310.3 E provides that:
"Except as otherwise provided by R.S. 23:1101(D) and 1378(E), the Hearing Officer shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter."
The grant of exclusive jurisdiction of certain subject matters to an agency results in the subtraction of those matters from the district court's jurisdiction. This can be contrasted with concurrent jurisdiction. Where concurrent jurisdiction exists, the district court maintains original jurisdiction in the matters at the same time that an agency has been granted jurisdiction. Daily Advertiser v. Trans-La, 612 So.2d 7 (La.1993).
Since the hearing officers have been granted exclusive jurisdiction by the legislature over worker's compensation "claims or disputes," these matters have been excluded from the jurisdiction of district courts. However, the legislature did not define "claims or disputes" and the issue is whether this language includes the power to declare a statute unconstitutional.
State district courts are courts of general jurisdiction in all civil and criminal matters and as such are considered to have jurisdiction unless specifically denied it. See La. Const. art. II, §§ 1-2 and art. V, § 16. The law has always been that determining a statute's constitutionality is strictly a function of the courts because of the separation of powers doctrine. The intent of the legislature to deviate from this well established principal of law is not evidenced by its grant to hearing officers of jurisdiction over "claims and disputes." We do not find that this power has been explicitly subtracted from the jurisdiction of the district courts by the legislature and thus, find that the district courts retain this jurisdiction.

DECREE
The judgment of the hearing officer is affirmed as it holds that the hearing officer does not have jurisdiction to determine the constitutionality of worker's compensation statutes. Costs are assessed to Tomas, plaintiff-appellant.
AFFIRMED.
SAUNDERS, J., dissents with written reasons.
SAUNDERS, Judge, dissenting.
I believe the constitution as amended expressly permits the hearing officer to decide the issue of constitutionality:
Sec. 16. District Courts; Jurisdiction
Section 16. (A) Original Jurisdiction. (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters....
La. Const. Art. 5, Section 16(A)(1) (emphasis added).
Obviously, this case is a "worker's compensation matter" and just as obviously one expressly carved out from district courts' usual exclusive jurisdiction.
It is true, as the majority observes, that the legislature did not define "claims or disputes" in carving out this grant of original jurisdiction, but I am unable to find, fathom or fabricate a definition of these words that would preclude a determination of whether or not a claimant is being deprived of workers' *331 compensation benefits by the enforcement of an unconstitutional statute.
Moreover, both jurisprudence and practical considerations suggest that we should do so regardless of whether the district court or hearing officer has exclusive original jurisdiction, or whether both share it concurrently. "When the entire record is before the appellate court, remand for a new trial produces delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process." Gonzales v. Xerox Corporation, 320 So.2d 163, 166 (La. 1975). All the facts necessary to decide the case are before us. "Hence, it is best to determine the issue here and preclude further litigation." Piper v. Olinde Hardware & Supply Company, Inc., 288 So.2d 626, 629 (La.1974) (allowing subject matter jurisdiction issue to be raised initially at Supreme Court.)

THE MERITS
Were this court to reach the merits of this case, I would find in favor of plaintiff. No one questions whether plaintiff was subjected to extraordinary and unusual work stress in comparison to that experienced by the average employee in his occupation, nor that the work stress was the predominant and major cause of appellant's disabling strokes. Rather, plaintiff was denied relief under La.R.S. 23:1021(7)(e) solely on the basis that the work stress plaintiff sustained was not physical in nature but, rather, in the words of the hearing officer "was emotional or mental...."
I would reverse the conclusion of the hearing officer, who was clearly pained in making her decision but, citing Whittington v. Langston Drilling Co., Inc., 26,001 (La.App. 2 Cir. 9/2194), 643 So.2d 336, believed she lacked jurisdiction to determine the provision's constitutionality.
I believe that two constitutional lines of attack prohibit our application of La.R.S. 23:1021(7)(e) to the present factual scenario. Additionally, I believe the statute, when interpreted as intended, mandates relief in favor of the worker.

CONSTITUTIONAL ARGUMENTS

Protection
Article I, Section 3 of the 1974 Louisiana Constitution, The Declaration of Right to Individual Dignity, "commands the courts to decline enforcement of a legislative classification of individuals in three different situations:... (2) when the statute classifies persons on the basis of ... physical condition, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; ...." Sibley v. Board of Sup'rs of Louisiana State U., 477 So.2d 1094, 1107 (La.1985).
In my view, the employer has not carried its burden. (The State declined an invitation to participate.)
The employer's entire argument as to why La.R.S. 23:1021(7)(e) is constitutionally enforceable is predicated on United States Supreme Court judicial doctrines that hold no relevance in light of passage by the people of this state of the 1974 Louisiana Constitution:
Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.
With the adoption of these guarantees Louisiana moved from a position of having no equal protection clause to that of having three provisions going beyond the decisional law construing the Fourteenth Amendment.
The Declaration of Rights committee of the 1973 Constitutional Convention proposed an article raising the threshold of equal protection by prohibiting discrimination *332 because "of birth, race, age, sex, social origin, physical condition, or political or religious ideas." As explained by the committee spokesman, because the federal courts had failed to afford real or substantial protection by applying the Fourteenth Amendment to legislation based on all of these classifications, the proposed article would require judicial examination when any such classification was challenged and would assign to the State the burden of showing that the classification reasonably furthers a legitimate purpose. A person challenging a legislative classification based on any other grounds would have to show that the law was unreasonable or that it did not further any appropriate state interest.
The constitutional convention, in amending the article before its adoption, varied its emphasis but not its fundamental thrust toward greater protection against arbitrary discrimination. First, a major effort to reduce the article's level of protection to that afforded by the Fourteenth Amendment was decisively rejected. Next, legislative classifications because of race and religious beliefs were banned absolutely. Finally, the remaining specific categories of legislative classifications, viz., birth, age, sex, culture, physical condition, political ideas or affiliations, were permitted if the state could show that the classification was not arbitrary, capricious or unreasonable. Except for making race and religious beliefs absolutely forbidden classifications, there was no attempt to change the original concept of the Declaration of Rights Committee under which specific categories of classifications are designated, and the state is assigned the burden of justifying such a classification by showing that it substantially furthers an appropriate state purpose. See generally, Proceedings, Aug. 29, 1973, pp. 1016-18.
Sibley, at 1107-08.
Thus, plaintiff's rights must be protected unless and until the state or the employer can carry its burden of showing that the classification reasonably furthers a legitimate purpose.[1] I do not think either succeeded in doing so; indeed, the State did not even attempt to defend the statute's constitutionality.
Moreover, I think the statute, as applied in this case, is indefensible as an employee who is practically worked to death can no better control the affliction which inevitably strikes him than can an individual born with a disability, and certainly the constitutional provision discussed above, if it has any breath, would apply to legislation classifying individuals on that basis.

Inadequate Remedy
Louisiana Constitutional Article I, Section 22, states:
Sec. 22. Access to Courts
Section 22. All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
While this "constitutional guarantee providing for open courts and insuring a remedy for injuries" may "not warrant a remedy for every single injury," at least where the legislature allocates meaningful access to some forum in a nonarbitrary manner, Crier v. Whitecloud, 496 So.2d 305, 310 (La.1986), here it is applicable.[2] As appellant notes, *333 La.R.S. 23:1021(7)(e) does not simply limit the rights to redress of a worker unquestionably disabled on the job for certain work-connected injuries, but destroys them entirely.[3]
While La.R.S. 23:1032 bars the employee from filing suit in tort under La.Civ.Code art. 2315, La.R.S. 23:1021(7)(e) denies him redress in workers' compensation; thus, the combination of La.R.S. 23:1021(7)(e) and 23:1032 combine to deny certain individuals of their right to redress even for injuries unquestionably inflicted by the negligent actions of others.[4]Crier v. Whitecloud is distinguished on this basis. See Roberts v. Sewerage and Water Board, 92-2048 (La. 3/21/94), 634 So.2d 341.[5]

CONCLUSION
One of the triumphs of this state's Code of Civil Procedure is that it expressly intends to avoid procedural trapdoors which allow litigants to lose substantive rights because of failure to properly follow hyper technical procedural requirements. It declares that its articles "are to be construed liberally, and with due regard for the fact that rules of civil procedure implement the substantive law and are not an end in themselves." La.Code Civ.P. art. 5051. I believe that the philosophy thus expressed is one which courts should zealously and vigorously protect. To compel a party to litigate in two different forums does grave damage to the philosophy expressed in our Code of Civil Procedure. I must reject this approach.
*334 I believe we should have taken up the constitutionality of La.R.S. 23:1021(7)(e). Had we done so, I would have concluded that the statute is unconstitutional.
In the first instance, the state and the employer have failed to show a reasonable basis for discriminating against some but not all whose disabilities are unquestionably work-induced. Because its proponents must carry the burden of proof, this should complete the inquiry. The statute violates our state's equal protection guarantee.
In the second instance, the provision is unconstitutional even if one were to consider the argument the state fails to wage. La. R.S. 23:1021(7)(e), when read in conjunction with La.R.S. 23:1032, runs afoul of Louisiana Constitutional Article I, Section 22 (access to courts), as it denies a victim access to the only forum that remains available to him in light of La.R.S. 23:1032.
Accordingly, I respectfully dissent.

ORDER
The Application for Rehearing herein having been duly considered:
IT IS ORDERED that a Rehearing be, and the same is hereby, GRANTED IN PART FOR LIMITED PURPOSE STATED IN ATTACHED PER CURIAM; OTHERWISE, REHEARING DENIED.
PER CURIAM.
A limited rehearing is granted on the application of Gregory L. Tomas, plaintiff-appellant. This case is remanded to the Office of Worker's Compensation hearing officer with instructions to transfer the case to the district court of proper jurisdiction and venue for further proceedings on the constitutional issue. Otherwise, the rehearing is denied.
REHEARING GRANTED IN PART FOR LIMITED PURPOSE STATED HEREIN; OTHERWISE REHEARING DENIED.
NOTES
[1] Judge William N. Knight of the Thirty-first Judicial District participated in this decision by appointment of the Louisiana Supreme Court as judge Pro Tempore.
[2] Charles v. Travelers Ins. Co., 627 So.2d 1366 (La. 1993).
[3] By Act 938 of 1988 the Louisiana legislature eliminated the district court role in the worker's compensation litigation process. This act provided for administrative hearing officers within the Office of Worker's Compensation to serve the adjudicatory function that district court judges had previously performed. However, on September 6, 1990, the supreme court in Moore v. Roemer, 567 So.2d 75 (La. 1990), declared this act unconstitutional. Subsequently, a constitutional amendment divested the district courts of original jurisdiction in worker's compensation, purportedly rendering constitutional the previously unconstitutional worker's compensation legislation. This constitutional amendment became effective on November 7, 1990.
[1] The preceding constitutional observation is not novel. See Dennis, J. dissent in Charles v. Travelers Ins. Co., 627 So.2d 1366, 1373 (La.1993).

Charles does not control. In Charles, the Supreme Court by a majority concluded that claimants suffering strokes while at work sustained "perivascular" injuries within the purview of La. R.S. 23:1021(7)(e). Ultimately, the Louisiana Supreme Court concluded that Mr. Charles was not entitled to receive workers' compensation because he failed to establish that his work exertion was the predominant and major cause of his stroke and further admitted that the work he was doing was not different from the work performed by anyone else.
In this case, the hearing officer expressly found the contrary to be true on both counts, and only withheld recovery on the basis that plaintiff's stress, although work-related, was somehow emotional and not physical.
[2] Indeed, if Article 1, Section 22 were not applicable here to avail appellant of a forum, judicial or extrajudicial, it just as soon not be written.
[3] Plaintiff does not raise issue with the "higher burden of proof" required of stroke and heart attack victims.
[4] But see Mundy v. Dept. of Health and Human Resources, 593 So.2d 346, 349 (La.1992): "When the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving entitlement to immunity." Indeed, it may well be that appellant here is not barred from filing suit in tort under La.Civ.Code art. 2315, given the unconstitutionality of the alternative theory advanced by the employer. See Charles v. Travelers Ins. Co., n. 17, at 1372. See also Billiot v. B.P. Oil Co., 93-1118 at 10-12 (La. 9/29/94), 645 So.2d 604, 610-611.
[5] [I]n interpreting the Workers' Compensation Act, the basic history and policy of the compensation movement must be taken into account. See 13 Malone & Johnson Sec. 35. The dominant purpose of the movement to adopt compensation laws in the early decades of this century was not to abrogate existing tort remedies that afforded protection to workers. Rather, it was to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery available under the general tort law was inadequate to protect them. Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (6th Cir. 1979). The so-called "unholy trinity" of judicially-created employer defenses (assumption of the risk, contributory negligence and the fellow servant rule) were developed and strictly enforced as legal rules in the last half of the nineteenth century. The result was recovery in less than a quarter of work-related accidents, as injured workers subsidized economic growth. Boggs, 590 F.2d at 658-59, citing Prosser & Wade, Cases and Materials on Torts 619 (5th Ed. 1971); Prosser, Handbook of the Law of Torts Sec. 80 (1971). See also Larson, The Nature and Origins of Workmen's Compensation, 37 Cornell L.Q. 206 (1952); Horowitz, The Transformation of American Law 251-66 (1977); Pound, The Spirit of the Common Law 29-31 (1921). Workers' compensation laws were adopted as a compromise between contending forceslabor, which [92-2048 La. 8] generally favored reform, and employers, who generally opposed it. Workers were willing to exchange a set of common-law remedies of dubious value for modest workers' compensation benefits designed to keep the injured workers and their families from destitution. Boggs, 590 F.2d at 659.

Because workers' compensation benefits have lagged far behind the expansion of liability and the curtailment of tort defenses, courts have responded by liberally construing the coverage provisions of workers' compensation acts while narrowly construing the immunity provisions. This approach has been justified as follows:
[T]here is no strong reason of compensation policy for destroying common law rights ... [and] every presumption should be on the side of preserving those rights, once basic compensation protection has been assured.... The injured employee has a right to be made whole not just partly whole.... [A]ll the reasons for making the wrong-doer bear the costs of his wrongdoings still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an incentive to careful conduct and safe work practices.
Boggs, 590 F.2d at 660 (quoting 2A Larson, The Law of Workmen's Compensation Sec. 72.50 at 14-95 (1976)). In light of this basic history and policy, we agree with the foregoing authorities that every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights.
Roberts, at 345-346.