# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #041

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of September, 2024** are as follows:

**BY Hughes, J.:**

2023-CC-01291    ADVANCED BENEFIT CONCEPTS, INC.  VS.  BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH, INC. & PREFERRED CARE SERVICES, INC. (Parish of East Baton Rouge)

REVERSED AND REMANDED. SEE OPINION.

Weimer, C.J., dissents and assigns reasons.
Knoll, J., additionally concurs and assigns reasons.

**ADVANCED BENEFIT CONCEPTS, INC.**

**VS.**

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH, INC. & PREFERRED CARE SERVICES, INC.**

On Writ of Certiorari to the Court of Appeal, First Circuit,
Parish of East Baton Rouge

**HUGHES, J.[1]**

This case arises out of a petition for breach of contract filed by Plaintiff/Respondent, Advanced Benefits Concepts, Inc. ("ABC") in district court, against Defendants/Applicants, Access Health, Inc., Preferred Care Services, Inc., and Blue Cross and Blue Shield of Alabama (collectively "Access Health").[2]  In response, Access Health alleged, as a basis for its claim in its reconventional demand, its motion for summary judgment, and as an affirmative defense, that the contract was null and void because ABC violated the Louisiana Code of Ethics when it failed to register itself, its principal, and the agreement as required by the Executive Branch Lobbying Act ("the Act") (La. R.S. 49:71-78.1), particularly La. R.S. 49:78.1.  We granted writs to determine this res novo issue of whether the Board of Ethics ("the Board") has exclusive jurisdiction to determine whether the agreement is void under La. R.S. 49:78.1, as held by the appellate court, or whether the district court has jurisdiction to determine the issue as urged by Access Health. For the reasons discussed below, we conclude the district court has subject matter

---

[1] Retired Justice Jeannette T. Knoll, appointed Justice pro tempore, sitting for the vacancy in the Third District.

[2] Access Health, Blue Cross and Blue Shield of Alabama, and Preferred Care Services, Inc. operated as a single business enterprise.

jurisdiction to consider Access Health's affirmative defenses and reconventional demand. As a result, the appellate court's decision is reversed and this matter is remanded to the appellate court to consider the exception of prescription and the motion for summary judgment on the merits.

## FACTUAL AND PROCEDURAL HISTORY

ABC entered into an agreement with Access Health. ABC helped Access Health identify, establish, and enter into relationships with employer groups, which Access Health could contract with to provide healthcare benefits.[3] Among the groups identified by ABC was the State of Louisiana's Office of Group Benefits ("OGB"). The contract between Access Health and OGB provided that Access Health would provide a primary healthcare network and services to OGB plan participants. The agreement between ABC and Access Health provided for Access Health to pay ABC a fee of $1.25 per month for each employee covered under the OGB contract.[4]

In December of 2020, OGB sent Access Health a demand letter claiming Access Health owed it money for failure to meet the return on investment benchmarks mandated in the OGB contract. In February of 2021, OGB began withholding payments to Access Health. Later that year, OGB and Access Health reached a settlement and amended the OGB contract.

Beginning in December of 2020, Access Health stopped paying ABC's monthly fee under the agreement. ABC claims it is owed $6,930,000. ABC filed a petition for damages asserting breach of contract against Access Health.

Access Health answered ABC's lawsuit with a general denial and asserted a

---

[3] The agreement provided in part: "Whereas, ABC has and may continue to provide efforts and expend resources for the purpose of assisting [Access Health] in identifying and establishing business relationships with various [Employer groups]."

[4] The term of the OGB contract was from July 1, 2019 to June 30, 2022, with two one-year options to extend the term to June 30, 2024.

reconventional demand followed by a supplemental and amended reconventional demand. Pertinent to this case, Access Health asserted as separate affirmative defenses in its answer that the agreement was "an absolute nullity and void *ab initio*" and that "the Fee Agreement is void." In the first supplemental and amended answer and reconventional demand, it asserted as separate affirmative defenses that the agreement was "an absolute nullity and void *ab initio*" and that "the Fee Agreement (and any alleged preexisting oral agreement) is void . . . pursuant to [La. R.S.] 49:78.1."

In Count I of its reconventional demand, Access Health alleged "ABC represented [Access Health] as a lobbyist[,]" and "[d]uring its representation of [Access Health], ABC, through its principal, Charles Calvi, directly communicated with the chief executive officer of the OGB . . . for the purpose of influencing the OGB to award the OGB Agreement to [Access Health]." Access Health asserted that OGB was an executive branch agency of the state, and, as such, ABC and Mr. Calvi were required to register as lobbyists in the State of Louisiana pursuant to La. R.S. 49:78.1. Access Health alleged that because neither ABC nor Mr. Calvi were registered as lobbyists with the State of Louisiana when they entered into the agreement, ABC and Mr. Calvi engaged in a misrepresentation that rendered the agreement void pursuant to La. R.S. 49:78.1. Access Health asserted that because the agreement was void, ABC was not entitled to any of the payments established by the agreement, and ABC was unjustly enriched. Access Health prayed for a judgment declaring the agreement void and awarding as damages payments that Access Health had tendered to ABC under the agreement.

In response to the reconventional demand, ABC filed a declinatory exception of lack of subject matter jurisdiction, arguing that the district court did not have jurisdiction over enforcement provisions of the Code of Ethics. Rather, the legislature had provided the enforcement provisions of the Act to be within the

3

exclusive purview of the Board, absent a challenge to the constitutionality of a provision of the Code of Ethics. As a result, the district court lacked subject matter jurisdiction to hear Access Health's reconventional demand claim, and the claim should be dismissed with prejudice. In the alternative, ABC argued that the time for the Board to take action to void the contract had prescribed. *See* La. R.S. 49:78(A) and (B).

Access Health moved for summary judgment seeking dismissal of ABC's cause of action for breach of contract on the ground that the agreement was an "absolute nullity and void *ab initio* due to [ABC's] failure to register that contract with the State or . . . to register as a lobbyist." Access Health requested the district court take judicial notice that ABC and Mr. Calvi were not registered as lobbyists via a "lobbying portal" located at HTTSP://ethics.la.gov/LobbyistData.[5] Access Health also argued it was entitled to summary judgment for unjust enrichment to recover the amounts paid to ABC pursuant to the null agreement.

ABC filed an opposition to the motion for summary judgment, disputing that the agreement was a contract for ABC to provide lobbying services on behalf of Access Health and that ABC and Mr. Calvi met the requirements of being executive branch lobbyists under Louisiana law. In addition to arguing that the agreement was not a lobbying contract and that it and Mr. Calvi were not lobbyists, ABC argued Access Health was not entitled to summary judgment as a matter of law because the district court lacked subject matter jurisdiction to declare the agreement void pursuant to La. R.S. 49:78.1.

A hearing was held on ABC's exceptions of lack of subject matter jurisdiction and prescription, and Access Health's motion for summary judgment. At the

---

[5] In its list of undisputed facts in support of the motion for summary judgment, Access Health, in a footnote, stated that "[a] search of the Lobbying Portal on March 25, 2022[,] returned no entries for [ABC] . . . no entries for 'Charles Calvi,' 'Charles Calvi Jr.,' or 'Calvi.'"

hearing, the district court overruled the exceptions and held it had subject matter jurisdiction to determine if ABC's and Mr. Calvi's failure to register as lobbyists and/or to register the agreement with the Board would void the agreement. The district court stated: "This Court is in the best position and has the legal authority to recognize and apply the state's public policy interest related to registration requirements associated with individuals who choose to lobby for contracts with the state." The district court also held it had subject matter jurisdiction "to apply the prescriptive or peremptive rules applicable in this case."

At the hearing, the district court granted, in part, Access Health's motion for summary judgment. In oral reasons, it held that the agreement was an absolute nullity and void for failure of ABC to register as a lobbyist and to register the contract for lobbying services. The district court opined that the record reflected that neither the agreement, ABC, nor Mr. Calvi were registered with the state. The district court concluded that as a result, ABC engaged in a misrepresentation sufficient to defeat and void the agreement pursuit to La. R.S. 49:78.1.

Thereafter, on May 20, 2022, the district court issued three judgments. The first judgment denied ABC's exceptions of lack of subject matter jurisdiction and prescription. The second judgment granted summary judgment in favor of Access Health, dismissing ABC's claim for breach of contract with prejudice, and expressly provided that the judgment was final for the purpose of an immediate appeal. The third judgment denied Access Health's motion for summary judgment on the unjust enrichment claim as premature.

ABC filed a motion for new trial on two of the judgments: the denial of ABC's exception of lack of subject matter jurisdiction and exception of prescription; and, the grant of Access Health's motion for summary judgment. ABC's motion for new trial was denied. ABC then filed a suspensive appeal as to these two judgments.

5

Prior to the district court issuing a judgment denying ABC's motion for new trial, Access Health was granted leave by the district court to amend the allegations of its reconventional demand a second time to add Mr. Calvi as a defendant-in-reconvention. Access Health averred that ABC acted as Mr. Calvi's alter ego; and, therefore, Mr. Calvi was personally liable for the return of the payments tendered to ABC under the agreement as to its claim for unjust enrichment. In response, ABC and Mr. Calvi filed a declinatory exception of lack of subject matter jurisdiction. On October 24, 2022, the district court issued a judgment overruling the exception. ABC sought supervisory review.

The appellate court addressed the appeal and writ together. ABC appealed the district court's judgment granting Access Health's motion for summary judgment and dismissing ABC's cause of action for breach of the agreement based on a finding that the agreement was a nullity. ABC also challenged the district court's interlocutory judgments, which overruled the declinatory exceptions of lack of subject matter jurisdiction and prescription. *Advanced Benefit Concepts, Inc. v. Blue Cross & Blue Shield of Alabama*, 22-1193 (La. App. 1 Cir. 8/8/23), 375 So.3d 447.

The court of appeal sustained the exceptions of subject matter jurisdiction and reversed the granting of Access Health's motion for summary judgment that dismissed the suit. The court of appeal concluded that subject matter jurisdiction to declare null the fee agreement between lobbyist ABC and its principal, Access Health, lies exclusively with the Board. *Advanced Benefit Concepts*, 375 So.3d at 455. The appellate court began its analysis by noting:

> The grant of exclusive jurisdiction of certain subject matters to the Board results in the subtraction of those matters from the district court's jurisdiction. *See Jones v. Board of Ethics for Elected Officials*, 96-2005 (La. 5/9/97), 694 So.2d 171, 172, on reh'g, 96-2005 (La. 6/20/97), 696 So.2d 549. A determination of the application or interpretation of the Executive Branch Lobbying Act is within the grant of exclusive jurisdiction of certain subject matter to the Board. *See In*

*re Arnold*, 2007-2342 (La. App. 1st Cir. 5/23/08), 991 So.2d 531, 537; La. R.S. 49:78(A); and La. R.S. 42:1132(D).

*Advanced Benefit Concepts*, 375 So. 3d at 452. The appellate court then determined that *River Birch, Inc. v. Robin & Associates, Inc.*, discussed *infra*, is not dispositive of the case at bar because *River Birch* was decided before La. R.S. 49:78.1 was added by the legislature in 2006.

The appellate court next discussed whether La. R.S. 49:78.1(D)[6] supports the argument that the district court has subject matter jurisdiction in this case. In concluding that it did not, the court of appeal stated, "it is clear that La. R.S. 49:78.1(D) simply references the other applicable penalties as well as the other remedies and relief provided in La. R.S. 49:78(D)." *Advanced Benefit Concepts*, 375 So.3d at 455. The court of appeal concluded that "subject matter jurisdiction to declare null the fee agreement between lobbyist ABC and its principal, Access Health, lies exclusively with the Board." *Id.* Thus, the appellate court held that the exceptions of lack of subject matter jurisdiction should have been granted, and given that the district court had no jurisdiction, the exception of prescription was not properly before it. The appellate court also ruled that the district court "improvidently granted summary judgment" and reversed the dismissal of the suit. *Id.* at 456.[7]

---

[6] La. R.S. 49:78.1(D) states: "The provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law."

[7] In a footnote, the appellate court rebuffed Access Health's argument that the district court had jurisdiction to consider the issue raised as an affirmative defense, stating:

> On appeal, Access Health suggests the fee agreement's unenforceability is an affirmative defense which it is entitled to assert in response to ABC's breach of contract claim. But ABC directed the lack of subject matter jurisdiction exceptions at Access Health's reconventional demand, which sought a declaration that the fee agreement was null, which is the same relief Access Health seeks through its affirmative defense. Mindful that the party asserting the affirmative defense has the burden of proving it, see *LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.,* 2013-0163 (La. App. 1st Cir. 11/7/14), 167 So.3d 746, 756, *writ not considered*[,] 2015-0086 (La. 4/2/15), 162 So.3d 392, our disposition of the exceptions of subject matter jurisdiction, therefore, necessarily disposes of Access Health's affirmative defense contention.

*Advanced Benefit Concepts*, 375 So.3d at n.10.

Access Health sought review by this court asserting the following errors:

1. The First Circuit misapplied the precedent of this Court to determine whether a matter falls within the original subject matter jurisdiction of district courts or the exclusive subject matter jurisdiction of agencies, and erroneously held that the district court lacked subject matter jurisdiction to recognize Applicants' affirmative defense pursuant to La. C.C. art. 2030; the First Circuit erroneously held that the Board has exclusive subject matter jurisdiction to declare a lobbying agreement null and void if the lobbyist violates Louisiana law by failing to register a contract for lobbying services.

2. The First Circuit misinterpreted La. R.S. 49:78.1 as precluding the district court from hearing Applicants' affirmative defense of absolute nullity pursuant to La. C.C. art. 2030.

Access Health contends it is the relief sought by the plaintiff, without reference to any affirmative defense asserted, that determines whether a matter falls within the original subject matter jurisdiction of district courts or the exclusive subject matter jurisdiction of agencies. *See Opelousas Tr. Auth. v. Cleco Corp.*, 12-622, p. 16 (La. 12/4/12), 105 So.3d 26, 36 (quoting *Daily Advertiser v. Trans-La, a Div. of Atmos Energy Corp.*, 612 So.2d 7, 16 (La. 1993) ("[T]he manner in which plaintiffs couch their claims does not automatically vest jurisdiction in the district court; rather, the nature of the relief demanded is dispositive."). Access Health asserts that because ABC asserted a breach of contract claim, the district court had original jurisdiction over the case. It argues that a district court retains subject matter jurisdiction to adjudicate contractual remedies and defenses, including the affirmative defense of absolute nullity pursuant to La. C.C. art. 2030, even if an administrative tribunal, such as the Board, also has the legal authority to declare certain contracts void. Access Health contends that although the agreement violated the Code of Ethics rendering it void pursuant to La. R.S. 49:78.1, the Code of Ethics does not create the affirmative defense. Rather, an absolute nullity under La. C.C. art. 2030 is predicated on the breach of some other law, in this case, the Code of Ethics. Access Health asserts that it was not required to exhaust administrative

remedies before the Board because it was not asserting a cause of action pursuant to the Code of Ethics.

Access Health argues that the appellate court's ruling conflicts with other appellate court decisions in which a district court's consideration of claims regarding the validity of contracts due to violations of the Code of Ethics was upheld.

Access Health asserts that La. R.S. 49:78.1(D), which provides that the "provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law," preserves the remedies and relief afforded by law, including the affirmative defense of absolute nullity.

In opposition, ABC asserts that the legislature clearly granted exclusive jurisdiction to the Board to administer and enforce the Act. ABC emphasizes that this court has held that the "grant of exclusive jurisdiction of certain subject matters to an agency results in the subtraction of those matters from the district court's jurisdiction." *Jones v. Bd. of Ethics for Elected Officials*, 96-2005, p. 3 (La. 5/9/97), 694 So.2d 171, 172, *modified on rehearing,* 696 So.2d 549 (La. 6/20/97) (citing *Tomas v. Conco Food Distributors*, 95-348 (La. App. 3 Cir. 10/25/95), 666 So.2d 327).[8]

ABC asserts that Access Health's interpretation of Subsection D of La. R.S. 49:78.1 would render meaningless the provisions of the Act that empower the Board with the exclusive jurisdiction to enforce and interpret the Act's rules.

ABC urges that Access Health's argument that the district court has jurisdiction to declare the agreement null under La. C.C. art. 2030 was not properly raised below as the absolute nullity affirmative defense was named along with other "boilerplate" affirmative defenses in Access Health's answer and Access Health first raised the unregistered lobbying issue for the first time in their Supplemental and

---

[8] This principle of law was set forth in a workers' compensation case, *Tomas*, 666 So.2d at 330.

Amended Answer and Reconventional demand. Alternatively, ABC asserts that Access Health has mischaracterized this dispute by improperly and intentionally framing it as a question of whether the district court had jurisdiction to hear an affirmative defense regarding the nullity of the agreement. First, ABC contends that Access Health's argument that it sought to void the agreement in an affirmative defense, rather than in a reconventional demand, is a distinction without a difference. Second, it emphasizes that the legislature used the concept of voidability and not nullity in La. R.S. 49:78.1. ABC argues that nullity implies an obstacle to the formation of a valid contract, voidability does not. *See* La. C.C. art. 2029 ("A contract is null when the requirements for its formation have not been met"). ABC asserts that in this case there was no obstacle to the formation of the agreement; it was simply not registered with the Board. In addition, ABC argues the prescriptive period and the elements of La. C.C. art. 2030 differ from La. R.S. 49:78.1. "Action for annulment of an absolutely null contract does not prescribe." La. C.C. art. 2032. Whereas the period to void a contract for non-compliance with La. R.S. 49:78.1 is within two years of the violation. La. R.S. 49:78(B). As to the difference in elements, ABC emphasizes the agreement does not violate a rule of public order, nor was the object of the contract illicit or immoral as required by La. C.C. art. 2030. On the other hand, La. R.S. 49:78.1 requires lobbyists to register their contracts with the Board to promote open and responsible government. La. R.S. 49:78.1 provides that the Board can "void" the contract for non-compliance; whereas, if the elements of La. C.C. art. 2030 are proven, the contract is found to be an absolute nullity.

ABC argues for the first time that Access Health failed to seek a decision from the Board to declare the agreement void, a precondition Access Health must satisfy before asking the district court to deny recovery to ABC under the agreement.[9] ABC

---

[9] Access Health asserts ABC did not previously raise this issue; thus, it is waived. ABC acknowledges it is raising this issue for the first time but asserts it is permissible because it is supported by the record. La. C.C.P. art. 2133(B).

10

emphasizes that after the Board conducts a hearing on the matter, if the Board determines that the agreement should be voided, the district court would then have the authority to act on Access Health's affirmative defense. ABC contends, however, that because more than two years have elapsed since the occurrence of the alleged violation, the prematurity issue cannot be remedied, and the First Circuit's decision should stand. La. R.S. 49:78(B).

This court granted the writ application[10] to address the narrow issue of whether the Board has "exclusive" jurisdiction to determine whether the agreement is void under La. R.S. 49:78.1, as held by the appellate court, or whether the district court has original subject matter jurisdiction to determine this contractual dispute.

### ANALYSIS

Louisiana Code of Civil Procedure article 1 provides: "Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." Jurisdiction over subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. An objection based on the lack of subject matter jurisdiction is raised by a declinatory exception. See La. C.C.P. art. 925(A)(6) (2022).[11] The issue in this case presents a question of law and, thus, is reviewed under the de novo standard. *Caballero v. Caballero*, 15-2039 (La. 5/3/16), 198 So. 3d 1163, 1167.

"[T]he starting point for the interpretation of any statute is the language of the statute itself." *Touchard v. Williams*, 617 So.2d 885, 888 (La. 1993). The Louisiana

---

[10] *Advanced Benefit Concepts, Inc. v. Blue Cross & Blue Shield of Alabama,* 23-1291 (La. 12/19/23), 374 So.3d 972.

[11] We note that as of August 1, 2023, an exception of lack of subject matter jurisdiction is an objection to be raised by peremptory exception. La. C.C.P. art. 927.

Civil Code mandates that when a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without further interpretation of the intent of the legislature. La. C.C. art. 9; *see also* La. R.S. 1:4. Further, the words of a law must be given their generally prevailing meaning. La. C.C. art. 11; *see also* La. R.S. 1:3.

The Louisiana Constitution grants original jurisdiction of all civil and criminal matters to the district courts, except as otherwise authorized by the constitution. La. Const. art. V, § 16(A). The Louisiana Constitution also provides for a code of ethics, to be administered by one or more boards. Louisiana Constitution Article X, section 21 provides:

> The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal.

La. R.S. 49:71 provides for the purpose of the Executive Branch Lobbying Act:

> The legislature declares that the operation of open and responsible government requires that the fullest opportunity be afforded to the people to petition their government for the redress of grievances and to express freely their opinions on actions of the executive branch. To preserve and maintain the integrity of executive branch action and state government, the legislature also declares it is necessary that the identity of persons who attempt to influence actions of the executive branch and certain expenditures by those persons be publicly disclosed.

The Executive Branch Lobbying Act requires lobbyists to register with the ethics board as soon as possible after employment as a lobbyist or after the first action requiring registration as a lobbyist. La. R.S. 49:74. The Act states that the ethics board in performance of its duties shall register lobbyists and assign registration numbers, promulgate all rules and forms needed, and establish and maintain access to a searchable electronic database. La. R.S. 49:77. The Act also provides that, "The ethics board shall be responsible for the enforcement of provisions of this Part" and

12

that, "No action to enforce any provision of this Part shall be commenced after expiration of two years after the occurrence of the alleged violation." La. R.S. 49:78(A)-(B). The Act further provides that the ethics board has the authority to impose and collect penalties and censure parties found in violation of the Act. La. R.S. 49:78(C)-(D).

Following the 2005 *River Birch* opinion (discussed *infra*), which pointed out "there exists no legal authority for invalidating the contract on the basis of these statutory violations," the legislature in 2006 enacted La. R.S. 49:78.1.[12] That statute, which is at issue in this case, provides in full:

A. No person shall enter into a contract to act in a representative capacity for the purpose of lobbying and fail to register or fail to file a supplemental registration providing the name and address of the person by whom he is employed or engaged and, if different, whose interests he represents pursuant to such contract as required by this Part.

B. Any person who violates the provisions of Subsection A of this Section shall have engaged in a misrepresentation sufficient to defeat or void the contract such person entered into to act in a representative capacity for the purpose of lobbying. Any effort to register or to file a supplemental registration after any remedy or relief relative to such a violation is sought pursuant to any provision of law shall not be sufficient to reverse the misrepresentation.

C. The board shall afford any person accused of violating Subsection A of this Section a hearing in accordance with the provisions of Part III of Chapter 15 of Title 42 of the Louisiana Revised Statutes of 1950. If the board finds that a person violated the provisions of Subsection A of this Section, the board shall order that the contract entered into for the purpose of lobbying by such person is void and the provisions thereof unenforceable.

D. The provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law.

Here, La. R.S. 49:78.1(A)-(B), provides that any person who enters into a contract to act in a representative capacity for the purpose of lobbying and fails to

---

[12] Judge Kuhn wrote in his concurrence: "The facts of this case demonstrate compellingly that the legislature needs to vigorously revise the applicable statutes governing lobbying activities. The potential for serious abuse justifies full and complete disclosure of all representative relationships." *River Birch v. Robin & Assocs.*, 04-1561 (La. App. 1 Cir. 6/15/05), 906 So.2d 729, 739.

register "shall have engaged in a misrepresentation sufficient to defeat or void the contract." Subsection C provides that after a hearing in which the Board finds that a person violated Subsection A, the Board shall order that the contract entered into for the purpose of lobbying by such person is void and the provisions thereof unenforceable. Finally, Subsection D provides that the "provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law." The statute does not contain the word "exclusive," rather, the statute itself preserves any other penalties or any other remedy or relief "provided by law," which would include the assertion of an affirmative defense as well as a reconventional demand. Given the inclusion of Subsection D, we hold that the district court has not been deprived of subject matter jurisdiction to hear this case by an exclusive grant of jurisdiction to the Board. While this precise issue has not been before this court, we note cases involving the Code of Ethics in lower courts have reached the same conclusion. *See, e.g., St. Bernard Par. Gov't v. Perniciaro*, 19-604 (La. App. 4 Cir. 3/11/20), 364 So.3d 185, 189 (relying on *Plaquemines Par. Gov't v. Williams*, 18-675 (La. App. 4 Cir. 12/19/18), 262 So.3d 1080); *Northshore Cap. Enterprises v. St. Tammany Hosp. Dist. No. 2*, 01-1606 (La. App. 1 Cir. 6/21/02), 822 So.2d 109, 114.

To hold otherwise would require a district court to enforce contracts that may be illegal under Louisiana law. With the enactment of La. R.S. 49:78.1 following the *River Birch* decision, the legislature has clearly established the public policy that contracts for services of lobbyists who are not registered with the State are not to be enforced and that other penalties, remedies, or relief may sought in relation to the illegal contract. *River Birch, Inc. v. Robin & Assocs.*, 04-1561 (La. App. 1 Cir. 6/15/05), 906 So.2d 729, 734-35, *writ denied*, 05-2201 (La. 2/10/06), 924 So.2d 176. In *River Birch*, a lobbyist brought a cause of action for breach of a contract for lobbying services against its principal. 906 So.2d at 730-31. The principal argued

14

that the contract was unenforceable as an absolute nullity because, among other reasons, the lobbyist failed to register its relationship with its principal with the state as required by Louisiana law. *Id.* at 731. Although the First Circuit agreed that the lobbyist broke the law by failing to register with the state, the court held that the statutory violation in that case did not invalidate the contract because the then-governing Lobbying Act neither "address[ed] nor govern[ed] contracts negotiated between lobbyists and clients" and contained its own penalty provisions "consisting primarily of relatively nominal monetary fines," which were to be imposed by the Board. *Id.* at 734.

In response to the *River Birch* decision, the legislature promptly amended the Legislative Lobbying Act, La. R.S. 24:50 et seq., and the Executive Branch Lobbying Act, La. R.S. 49:71, et seq., to make it clear that a lobbyist who fails to register a contract for lobbying services "shall have engaged in a misrepresentation sufficient to defeat or void the contract." These statutes announce the strong public policy of Louisiana that lobbyists "shall" not be allowed to enforce unregistered contracts for lobbying services. Moreover, the updated statutes explicitly protect relief and remedies beyond penalties imposed by the Board, allowing a lobbyist's principal to seek remedies provided by law where a lobbyist fails to properly register with the State. La. R.S. 49:78.1(D).

In contrast with the court of appeal, we do not read La. R.S. 49:78.1(D) to "simply reference[] the other applicable penalties as well as the other remedies and relief provided in La. R.S. 49:78(D)." *Advanced Benefit Concepts*, 375 So.3d at 455. Critical to this conclusion made by the court of appeal was the determination that La. R.S. 49:78 "empowers the Board to impose other remedies and relief in addition to penalties." *Id.* However, La. R.S. 49:78 does not provide for remedies or relief. Black's Law Dictionary defines penalty as "punishment imposed on a wrongdoer, [usually] in the form of imprisonment or a fine," and it defines civil penalty as a

15

"fine assessed for a violation of a statute or regulation." Black's Law Dictionary (12th ed. 2024). Remedy is defined as the "means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." Black's Law Dictionary (12th ed. 2024). Relief is defined as the "redress or remedy, [especially] equitable in nature (such as an injunction or specific performance), that a party asks of a court." Black's Law Dictionary (12th ed. 2024).

La. R.S. 49.78(C) gives the ethics board "the authority to impose or collect penalties" as well as the ability to censure or prohibit a person from lobbying for a period of time. La. R.S. 49.78(D) lists an assortment of monetary penalties that may be levied for failing to register as a lobbyist, failing to timely file an expenditure report, and failing to file an accurate and complete report, "[i]n addition to any other applicable penalties." By its own terms, the consequences listed in La. R.S. 49:78 are "penalties," and none of them could be fairly considered remedies or relief. Thus, we read La. R.S. 49:78.1(D) to allow any other penalties, remedies, or relief a party may have available. The reference relied on by the court of appeal is not to "this section" or "this part," but rather to any other remedy available "by law," a much broader concept.

We note that our decision does not impede the Board's ability to hear cases of possible violations or administer or enforce the Executive Branch Lobbying Act. The issue presented here is different than that presented in *Jones v. Board of Ethics for Elected Officials*, 694 So.2d 171. In *Jones* the issue was whether the district court properly granted a temporary restraining order, enjoining the Board of Ethics for Elected Officials from proceeding with a public hearing on conflicts of interest charges brought against Charles D. Jones, a Louisiana state senator. *Id.* at 171. Jones sought injunctive relief, contending that the pre-hearing procedure of the Board of Ethics was fraught with due process violations and that the procedures to be used by the Board of Ethics were similarly flawed. *Id.* The court of appeal in the instant case

16

and the respondent cite *Jones* for the proposition that, "[t]he grant of exclusive jurisdiction of certain subject matters to an agency results in the subtraction of those matters from the district court's jurisdiction." *Jones*, 694 So.2d at 172; *Advanced Benefit Concepts*, 375 So.3d at 452. The *Jones* case is distinguishable from the case at bar in two important ways. First, the state official was seeking a determination on the constitutionality of the Board's procedures. No constitutional arguments have been made in the case at bar, and it is well established that any constitutional challenges to an agency's procedures or to a statutory provision of the ethics code are squarely within the jurisdiction of a district court. *Jones*, 694 So.2d at 173-74. Second, the district court enjoined the Board's proceedings, stopping it from exercising its function as outlined by law. Thus, the statement that the "grant of exclusive jurisdiction of certain subject matters to an agency results in the subtraction of those matters from the district court's jurisdiction" is dicta in *Jones*, which is not on all fours with the facts in the case at bar.

The district court's rulings in this case are an exercise of its own jurisdiction. That one remedy it is afforded (nullification of a contract) is similar to another remedy available to the Board (declaring a contract void) does not remove the ability of the Board to administer and enforce the Executive Branch Lobbying Act. In addition, there are more penalties that the Board may have been able to impose here: monetary penalties, censure, or a prohibition on lobbying activities for a period of time. *See* La. R.S. 49:78. In this way, the Board is still "responsible for the enforcement provisions" of the Executive Lobbying Act. La. R.S. 49:78(A).

Having determined that the Executive Branch Lobbying Act allows for other "penalties or any other remedy or relief provided by law," including making affirmative defenses and reconventional demands, the issue remains whether a contract in violation of the Act can be declared an absolute nullity under Louisiana Civil Code article 2030, which provides:

A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.

Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

This article contemplates that another law may be used to determine whether a rule of public order is violated or whether the object of a contract is illicit or immoral. *See, e.g., Robinson v. Papania*, 22-1010 (La. App. 1 Cir. 3/6/23), 368 So.3d 74, 78, *writ denied*, 23-488 (La. 5/23/23), 360 So.3d 1262 (contract between builder and homeowner an absolute nullity where builder was not licensed by the state board). When a contract produces a result prohibited by law, Article 2030 allows for a court, even on its own motion, to declare it absolutely null. If not for this provision, a court could be required to enforce contracts made in violation of the law or against public policy. This is an issue to be decided on the merits.

## CONCLUSION

This case does not present an enforcement action or an advisory opinion by the Board of Ethics. Rather, the instant matter is a contractual dispute within the original subject matter jurisdiction of the district court which in no way impinges on the power and authority of the Board. The Executive Branch Lobbying Act (La. R.S. 49:71-78.1) does not deprive the district court of jurisdiction to hear the contract dispute presented in this case.

## DECREE

The ruling from the court of appeal is reversed, and this case is remanded to the court of appeal for consideration of the exception of prescription filed by ABC and the merits of the motion for summary judgment filed by Access Health.

**REVERSED AND REMANDED.**

# SUPREME COURT OF LOUISIANA

### No. 2023-CC-01291

### ADVANCED BENEFIT CONCEPTS, INC.

### VS.

### BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH, INC. & PREFERRED CARE SERVICES, INC.

*On Writ of Certiorari to the Court of Appeal, First Circuit,*
*Parish of East Baton Rouge*

**WEIMER, C.J.**, dissenting.

Finding the Board of Ethics ("Board") has exclusive jurisdiction to determine whether the contract between Advanced Benefit Concepts, Inc. ("ABC") and Access Health is void under La. R.S. 49:78.1, I must respectfully dissent.

The adjudicative authority of both the district court and the Board stems from the Louisiana Constitution. Subject matter jurisdiction is "the legal power and authority of a tribunal to adjudicate a particular matter involving the legal relations of the parties and to grant the relief to which the parties are entitled." **Daily Advertiser v. Trans-La, a Div. of Atmos Energy Corp**., 612 So.2d 7, 16 (La. 1993) (citing La. C.C.P. arts. 1 and 2). As a general rule, district courts have jurisdiction over all civil matters "[e]xcept as otherwise authorized by [the Louisiana] constitution." La. Const. art. V, § 16(A)(1). The grant of exclusive jurisdiction of certain subject matters to a board or agency results in the subtraction of those matters from the district court's jurisdiction. **Jones v. Board of Ethics for Elected Officials**, 96-2005, p. 3 (La. 5/9/97), 694 So.2d 171, 172.

The Board is a constitutionally mandated entity. Louisiana Const. art. X, § 21 provides:

The legislature shall enact a code of ethics for all officials and employees of the state and its political subdivisions. The code shall be administered by one or more boards created by the legislature with qualifications, terms of office, duties, and powers provided by law. Decisions of a board shall be appealable, and the legislature shall provide the method of appeal.

Pursuant to this directive, the Legislature enacted the Code of Governmental Ethics ("Ethics Code")[1] and created the Board to enforce the Code.[2] Specific to the issue before this court, the Legislature has mandated that the Board be responsible for enforcement of the statutory provisions regulating executive branch lobbying. La. R.S. 49:78(A).[3]

Here, Access Health sought relief in the district court premised on having its contract with ABC determined to be null or void due to ABC's violation of La. R.S. 49:78.1. That statute provides:

A. **No person shall enter into a contract to act in a representative capacity for the purpose of lobbying and fail to register** or fail to file a supplemental registration providing the name and address of the person by whom he is employed or engaged and, if different, whose interests he represents pursuant to such contract as required by this Part. [Emphasis added.]

B. **Any person who violates the provisions of Subsection A of this Section shall have engaged in a misrepresentation sufficient to defeat or void the contract** such person entered into to act in a representative capacity for the purpose of lobbying. Any effort to register or to file a supplemental registration after any remedy or relief relative to such a violation is sought pursuant to any provision of law shall not be sufficient to reverse the misrepresentation. [Emphasis added.]

C. **The board shall afford any person accused of violating Subsection A of this Section a hearing** in accordance with the provisions of Part III of Chapter 15 of Title 42 of the Louisiana Revised

---

[1] La. R.S. 42:1101.

[2] La. R.S. 42:1132.

[3] Part IV of Title 49 in the Revised Statutes is entitled "Executive Branch Lobbying." Contained within this part of the Revised Statutes is La. R.S. 49:78(A), which provides that "[t]he ethics board shall be responsible for the enforcement of provisions of this Part."

2

Statutes of 1950. **If the board finds that a person violated the provisions of Subsection A of this Section, the board shall order that the contract entered into for the purpose of lobbying by such person is void and the provisions thereof unenforceable**. [Emphasis added.]

It is clear that, if proven, ABC's alleged failure to register as a lobbyist is sufficient to "defeat or void" the contract pursuant to Subsection (B) of the statute. It is equally clear that Subsection (C) of the statute confers the power to "void" the contract for failure to register solely to the Board.[4]

This court has recognized the difficulty of determining whether an adjudicative tribunal has exclusive jurisdiction, noting the terms "exhaustion rule" (i.e., exclusive jurisdiction) and "primary jurisdiction"(i.e. concurrent jurisdiction) are "tools of less than surgical precision."[5] **Daily Advertiser**, 612 So.2d at 27 n.31. Concurrent jurisdiction exists in the district courts to adjudicate all legal matters, "except for those matters in which original jurisdiction is otherwise authorized by the constitution itself in other courts or in other adjudicative tribunals." *Id*. at 27 (internal citation omitted). "The distinction between primary jurisdiction and the exhaustion rule (exclusive jurisdiction) is that primary jurisdiction applies when concurrent jurisdiction exists between the courts and the administrative agency; and the exhaustion rule applies when exclusive jurisdiction exists in the administrative agency, and the courts have only appellate, as opposed to original, jurisdiction to review the agency's decisions." *Id*.

---

[4] Contrary to the majority opinion, I do not find the inclusion of Subsection (D) in this statute prohibits a finding that the Board has exclusive jurisdiction. Louisiana R.S. 49:78.1(D) provides that "[t]he provisions of this Section shall be in addition to any other applicable penalties or any other remedy or relief provided by law." As explained by the court of appeal, La. R.S. 49:78 empowers the Board to impose other remedies and relief in addition to penalties. Thus, reading the statutes in pari materia, "it is clear that La. R.S. 49:78.1(D) simply references the other applicable penalties as well as the other remedies and relief provided in La. R.S. 49:78(D)." **Advanced Benefit Concepts, Inc. v. Blue Cross & Blue Shield of Alabama**, 22-1193, p. 12 (La. App. 1 Cir. 8/8/23), 375 So.3d 447, 455, writ granted, 23-01291 (La. 12/19/23), 374 So.3d 972.

[5] It is suggested that these analytical tools are far removed from mathematical precision.

After considering the specific constitutional and statutory authority given to the Board, I am compelled to find the Board has exclusive jurisdiction to void unregistered lobbying contracts. Such power had been constitutionally and statutorily subtracted from the district court's original jurisdiction and authorized in the Board pursuant to La. R.S. 49:78.1. Thus, the courts only have appellate, as opposed to original, jurisidction to review the Board's decisions.[6] Any action, regardless of the form of the requested relief, seeking to have the contract declared null or void by the district court is premature. Because the claim is within the Board's exclusive jurisdiction and subject to the requirement of exhaustion of administrative remedies, I would affirm the ruling of the court of appeal. I therefore respectfully dissent.

---

[6] Louisiana R.S. 42:1141.5(D) provides that after the Board determines a violation, imposes a penalty, and issues a final decision, "the public servant or person may appeal as set forth in R.S. 42:1142." That statute provides for an appeal to the Court of Appeal, First Circuit.

4

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01291

## ADVANCED BENEFIT CONCEPTS, INC.

## VS.

## BLUE CROSS AND BLUE SHIELD OF ALABAMA, ACCESS HEALTH, INC. & PREFERRED CARE SERVICES, INC.

### On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of East Baton Rouge

**Knoll, J., additionally concurs with reasons.**

I agree with the majority opinion and write separately to emphasize it was an implied condition of the contract between ABC and Access Health that the contract would be registered as required by the Executive Branch Lobbying Act ("The Act"), particularly La. R.S. 49:74 and 49:78.1. Notably, La. C.C. art. 2054 provides:

> When the parties made no provision for a particular situation, it **must** be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. (Emphasis added).

ABC does not dispute the contract with Access Health was for lobbying services, nor does ABC dispute it failed to register the contract as mandated by La. R.S. 49:78.1(A). Significantly, ABC knew or should have known that it was necessary for the contract to be registered in compliance with the Act.

Markedly, ABC's petition and Access Health's reconventional demand, both seek monetary awards as relief. It is well established that original subject matter jurisdiction is determined by the relief sought. "[T]he nature of the relief demanded is dispositive" when determining subject matter jurisdiction. *Opelousas Tr. Auth. v. Cleco Corp.*, 12-0622, p. 16 (La. 12/4/12), 105 So.3d 26, 36 (quoting *Daily Advertiser v. Trans-La, a Div. of Atmos Energy Corp.*, 612 So.2d 7, 16 (La. 1993). "This Court has held the validity and enforcement of contracts, as well as

damage suits, are generally civil matters over which the district courts have original jurisdiction." *Opelousas Tr. Auth.*, 12-0622, p. 14, 105 So.3d at 35 (citations omitted). The determination of this case is civil in nature and rests within the subject matter jurisdiction of the Nineteenth Judicial District Court. The Board has no civil jurisdiction to adjudicate a breach of contract case or award monetary damages. Louisiana Constitution Article V, § 16(A)(1) provides: "Except as otherwise authorized by this constitution . . . a district court shall have original jurisdiction of all civil and criminal matters." *See also, Wooley v. State Farm Fire & Cas. Ins. Co.*, 04-882, p. 24 (La. 1/19/05), 893 So.2d 746, 764 (citation omitted)("Original jurisdiction is jurisdiction in the first instance and specifies the adjudicative tribunal in which the initial adjudication is made . . . . The legislature is without authority to divest district courts of original jurisdiction over all civil matters.").

The jurisdictional issue raised by ABC is a red herring. It unnecessarily causes protracted and expensive litigation before the Board, which is without jurisdiction to grant the relief both litigants seek. The District Court is not without jurisdiction to take judicial notice of the Act as the Act affects the contract.

Accordingly, I further agree with the majority for the reasons stated in this additional concurrence that the district court has subject matter jurisdiction.